

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-29-2003

# Mitchell v. Horn

Precedential or Non-Precedential: Precedential

Docket 98-1932

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Mitchell v. Horn" (2003). *2003 Decisions*. Paper 811.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/811

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed January 29, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1932

MARK MITCHELL,

        Appellant

v.

MARTIN F. HORN, et al.

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 98-cv-04742)
District Judge: Honorable Edmund V. Ludwig

Argued August 1, 2002

Before: ROTH, RENDELL and AMBRO, Circuit Judges

(Opinion filed: January 29, 2003)

        Gregg H. Levy, Esquire
        Kevin C. Newsom, Esquire (Argued)
        Covington & Burling
        1201 Pennsylvania Avenue, N.W.
        Washington, D.C. 20004

         Attorneys for Appellant




        D. Michael Fisher, Esquire
        J. Bart DeLone, Esquire (Argued)
        Calvin R. Koons, Esquire
        John G. Knorr, III, Esquire
        Office of Attorney General
        Appellate Litigation Section
        15th Floor, Strawberry Square
        Harrisburg, PA 17120

         Attorneys for Amicus
        The Commonwealth of
        Pennsylvania

OPINION OF THE COURT

AMBRO, Circuit Judge:

Mark Mitchell, a Pennsylvania inmate acting pro se, filed
this suit under 42 U.S.C. 1983, claiming violations of his
First, Fifth, Eighth, and Fourteenth Amendment rights. He
alleges that a correctional officer planted contraband near

his locker because he filed complaints against that officer, that he was denied a fair hearing on the contraband charges, and that, as a result, he was placed in disciplinary confinement for several months, including four days in a cell that was smeared with feces and infested with flies and in which he could not eat, drink, or sleep. The District Court dismissed Mitchell's complaint sua sponte the day it was filed without requiring service on the defendants. For the reasons below, we reverse the District Court's judgment and remand for further proceedings.

I. Factual Background and Procedural History

On appeal from the dismissal of a complaint, we assume the allegations in the complaint to be true. See Ray v. Kertes, 285 F.3d 287, 291 (3d Cir. 2002); Micklus v. Carlson, 632 F.2d 227, 230 (3d Cir. 1980).

On October 5, 1996, while Mitchell was an inmate in the Drug and Alcohol Unit at the Graterford Correctional Institution in Pennsylvania ("Graterford"), prison officials

2

entered his living area to conduct a search. During the search, they found a folded brown paper napkin containing drugs and U.S. currency taped under Mitchell's locker. Mitchell denied owning or knowing about the contraband, and his urinalysis tested negative for drugs. At the security office, Mitchell asked a correctional officer to preserve the tape that had affixed the contraband under his locker so that it could be fingerprinted. Although Mitchell offered to pay for the fingerprint analysis, the prison denied his request. Pending a hearing on the contraband charges, prison officials placed him in the Restricted Housing Unit ("RHU").

The next day, prison officials brought Mitchell to the institution's security unit for questioning. Lieutenant Kowalski told Mitchell that he had information suggesting that Officer Ronald Wilson, the officer regularly assigned to the Drug and Alcohol Unit, framed Mitchell. Mitchell concurred that he had been set up and again requested fingerprint testing to prove his innocence. Kowalski offered to look into the matter, and Mitchell was returned to the RHU.

Two days after the officers discovered the contraband, Mitchell was called to a disciplinary hearing, in preparation for which he was permitted five minutes to confer with an inmate assistant. During the hearing, Mitchell argued that someone had set him up. He noted that the area in which the officers found the contraband was easily accessible to others, requested that the hearing examiner inquire when that area had last been searched, and asked again for a fingerprint test. His requests were denied. Finding Mitchell guilty of contraband charges and of lying to a prison employee, the hearing examiner sentenced him to ninety days in disciplinary custody.

Following proper procedure, Mitchell appealed the hearing examiner's verdict first to the Program Review Committee, then to the prison superintendent, and finally to the chief counsel. Each appeal was denied. During the pendency of these appeals, Mitchell was relocated to a cell normally used to house mentally ill inmates. The cell had "human waste smeared on the walls" and was "infested

with flies." At night, "kicking and banging on the doors by the other inmates" kept Mitchell awake.

Mitchell complained to prison officials about his conditions to no avail. He sought to file an administrative grievance protesting the conditions of his confinement, but prison officials denied him an inmate grievance form. Prison regulations provide that a grievance form is "the proper form to be used for submission of a grievance and it should be completed according to the directions provided." Commonwealth of Pa., Dep't of Corr., Consolidated Inmate Grievance Review System, Policy Statement DC-ADM 804 V(B) (Oct. 20, 1994). Additionally, inmate grievances must be "in writing and in the format provided on the forms supplied by the institution." Id. 804(VI)(A)(1) (internal citation omitted). After four days, during which Mitchell alleges he did not eat, drink, or sleep, the Program Review Committee, in the course of fulfilling its mandate to "interview all disciplinary custody cases every thirty (30) days," Commonwealth of Pa., Dep't of Corr., Inmate Disciplinary and Restricted Housing Procedures, Policy Statement DC-ADM 801 VI(D)(9) (Sept. 20, 1994), confirmed that his cell was unfit for human habitation. He was transferred to Huntingdon Correctional Institution on December 4, 1996.1

In January 1998, Mitchell returned to Graterford to face criminal drug-possession charges stemming from the October 5, 1996 contraband incident and was again placed in the RHU. At a preliminary hearing held after Mitchell's return to Graterford, all criminal charges against Mitchell were dismissed. Nonetheless, Graterford officials kept him segregated in the RHU for another two months, explaining that his return to the general Graterford population was "not an option." After numerous complaints, Mitchell was transferred back to Huntingdon on April 1, 1998.

On September 29, 1998, Mitchell filed the current complaint in the United States District Court for the

---

1. In early 1997, Mitchell filed a "private complaint" against Officer Wilson, whom he accused of planting contraband under his locker. The record does not reflect how or even whether this private complaint was resolved.

Eastern District of Pennsylvania, alleging that: (1) Officer Wilson planted contraband in retaliation for Mitchell's complaints against him, in violation of his First, Fifth, and Eighth Amendment rights; (2) prison officials denied Mitchell adequate time to confer with his inmate assistant, denied him the opportunity to present a meaningful defense, and failed adequately to investigate his allegations that the charges against him were fabricated, all in violation of his Fifth, Eighth, and Fourteenth Amendment rights; (3) prison officials placed Mitchell in a cell unfit for human habitation, in violation of his Eighth Amendment rights; and (4) as a result of these violations, Mitchell suffered, inter alia, emotional trauma, fear, and shock, and lost his status and any chance of commutation. As noted, the District Court dismissed his complaint the day it was filed. The Court dismissed as frivolous Mitchell's retaliation charge, which it held did not state a violation of his constitutional rights, and his due process claim, on the ground that Mitchell's confinement did not implicate a liberty interest. The District Court also held that Mitchell failed to exhaust his administrative remedies with respect to his Eighth Amendment conditions-of-confinement claim and dismissed that claim without prejudice. Finally, the District Court held that Mitchell could not bring a claim for emotional trauma without a prior showing of physical injury.

This timely appeal followed. Because the District Court dismissed this case before the defendant was served, the defendant -- Commissioner of the Pennsylvania Department of Corrections -- was not technically a party to this suit. Therefore, we requested that the Commonwealth of Pennsylvania file a brief as amicus curiae. 2

II. Jurisdiction

The District Court's dismissal of Mitchell's retaliation and due process claims as frivolous is appealable under 28 U.S.C. 1291. See Wilson v. Rackmill, 878 F.2d 772, 773 (3d

_____

2. We appreciate the candor and professionalism of the Commonwealth's counsel. We extend as well our appreciation to Mitchell's appointed counsel for the time and talent they have dedicated to this case.

Cir. 1989). Under the circumstances, his Eighth Amendment conditions-of-confinement claim is appealable as well. When a claim is dismissed without prejudice, we treat it as a final decision, appealable under 1291,"when a plaintiff 'declares his intention to stand on his complaint or when he cannot cure the defect in his complaint.' " Ray, 285 F.3d at 291 (quoting Booth v. Churner, 206 F.3d 289, 293 n.3 (3d Cir. 2000), aff 'd, 532 U.S. 731 (2001)). While Mitchell has not clearly declared his intention to stand on his complaint, the defect for which the District Court dismissed Eighth Amendment conditions-of-confinement

claim -- failure to exhaust available administrative remedies -- is no longer curable. See Booth , 206 F.3d at 293 n.3. It has been six years since the events resulting in this appeal, and prison regulations allowed Mitchell only fifteen days "after the events upon which the claims are based" to file a grievance. DC-ADM 804 VI(B)(2).

III. Discussion

This case raises four questions, which we address in the following order: (1) whether Mitchell exhausted the available administrative remedies on his Eighth Amendment conditions-of-confinement claim; (2) is his retaliation claim frivolous; (3) whether his due process claim is frivolous; and (4) has Mitchell alleged a physical injury sufficient to support his emotional injury claims. Throughout we bear in mind that, "however inartfully pleaded," the"allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).

A. Exhaustion

Before filing suit, prisoners must exhaust their available administrative remedies. 42 U.S.C. S 1997e(a). 3 The "availability of administrative remedies to a prisoner is a

_____

3. 42 U.S.C. S 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

6

question of law," which we review de novo. Ray, 285 F.3d at 291.

The District Court dismissed Mitchell's conditions-of-confinement claim, which asserts that he spent four days in a filthy cell in which he could not eat, drink, or sleep, because he "does not allege that he filed any grievances regarding the conditions of his cell." Mitchell argues that he did not file a grievance because prison officials denied him the necessary grievance forms and, as a result, he lacked "available" administrative remedies. The Commonwealth concedes this point. Accord Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) ("[A] remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an'available' remedy under S 1997e(a) . . . .") (alterations in original).

Even absent the prison's precluding Mitchell's grievance, the District Court erred procedurally. Failure to exhaust administrative remedies is an affirmative defense for the defendant to plead. Ray, 285 F.3d at 295. Under 1997e(c) failure to exhaust is not a permissible basis for sua sponte dismissal. Id. at 295-96. The defendants in this case were not served and therefore have not pled failure to exhaust or

any other defense. Thus, even if Mitchell failed to exhaust his available remedies (excused, as the Commonwealth concedes, by the failure to provide grievance forms), the District Court was premature in dismissing his complaint.

B. Retaliation claim

The District Court dismissed as frivolous Mitchell's retaliation claim -- that Officer Wilson planted illegal drugs under Mitchell's locker in retaliation for Mitchell's complaints against him -- reasoning that "[t]he filing of a false or unfounded misconduct charge against an inmate does not constitute a deprivation of a constitutional right."

To be frivolous, a claim must rely on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989); Wilson, 878 F.2d at 774; see, e.g., Deutch v. United States, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back). We exercise plenary review over a dismissal for frivolousness.

7

Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999); accord McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997). We are especially careful when assessing frivolousness in the case of in forma pauperis complaints, for "prisoners often must rely on the courts as the only available forum to redress their grievances, even when those grievances seem insignificant to one who is not so confined." See Deutch, 67 F.3d at 1090.

In dismissing Mitchell's retaliation claim, the District Court failed to recognize that "[g]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)). A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials " 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' " and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225) (alteration in original).

Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment. See Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) ("We have . . . held that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts."); Allah, 229 F.3d at 225 (holding that

an allegation that a prisoner was kept in administrative segregation to punish him for filing civil rights complaints stated a retaliation claim); Babcock v. White , 102 F.3d 267, 275-76 (7th Cir. 1996) (prisoner could survive summary judgment on his claim that prison officials retaliated against him for "use of the 'inmate grievance system' and previous lawsuits"). Moreover, we believe that several months in disciplinary confinement would deter a reasonably firm prisoner from exercising his First

Amendment rights. Finally, we agree with Mitchell that the word "retaliation" in his complaint sufficiently implies a causal link between his complaints and the misconduct charges filed against him.

Although Mitchell's retaliation claim may ultimately not succeed on the merits, it is not "indisputably meritless," "fantastic or delusional," "of little or no weight," or "trivial." Neitzke, 490 U.S. at 325, 327; Deutch , 67 F.3d at 1089. And while we would prefer that Mitchell's complaint be more detailed, we take seriously our charge to construe pro se complaints nonrestrictively. Haines, 404 U.S. at 520. To leave no doubt, the Commonwealth, in its role as amicus, agrees that the District Court erred in overlooking Mitchell's retaliation claim.

While Mitchell has stated a nonfrivolous retaliation claim, the Supreme Court recently clarified in Porter v. Nussle, 534 U.S. 516, 532 (2002), that 1997e(a) requires a prisoner to exhaust his administrative remedies when alleging "particular episodes" of misconduct -- which would include an act of retaliation. On appeal the Commonwealth's amicus brief acknowledges that "Mitchell appealed the hearing examiner's decision to the various levels available through the Inmate Disciplinary Procedure." Commonwealth's Br. at 5 (emphasis added).

C. Due Process

Mitchell's due process claim alleges that he received only five minutes to confer with an inmate assistant before his disciplinary hearing, that he was denied a fair opportunity to review the evidence against him, and that the hearing itself was conducted unfairly.

Mitchell's procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).4  Lesser restraints on a

_____

4. Additionally, state prisoners have a protected liberty interest in avoiding restraints that "exceed[ ] the sentence in such an unexpected

prisoner's freedom are deemed to fall "within the expected perimeters of the sentence imposed by a court of law." Id. If Mitchell had no protected liberty interest in remaining free of disciplinary custody, then the state owed him no process before placing him in disciplinary confinement. We therefore must decide whether Mitchell's contention that he had a protected liberty interest in avoiding disciplinary custody is frivolous. This is a question of constitutional fact over which we exercise independent appellate review"in order to preserve the precious liberties established and ordained by the Constitution." Fabulous Assoc., Inc. v. Pa. Pub. Util. Comm'n, 896 F.2d 780, 783 (3d Cir. 1990) (quoting Bose Corp. v. Consumers Union, 466 U.S. 485, 511 (1984)).

The District Court, citing Sandin, dismissed Mitchell's claim as frivolous because "prison regulations on confinement of inmates do not create a liberty interest enforceable in a S 1983 action." However, Sandin did not pronounce a per se rule, as the District Court's opinion implies. In Sandin, to determine whether the prisoner's treatment -- thirty days disciplinary segregation for resisting a strip search -- implicated a liberty interest, the Supreme Court carefully compared the circumstances of the prisoner's confinement with those of other inmates. It found no liberty interest implicated because the prisoner's "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody" in that "conditions at [the prison] involve[d] significant amounts of 'lockdown time' even for inmates in the general population." Sandin, 515 U.S. at 486. But the Court left open the possibility that a liberty interest will be implicated by conditions that impose an "atypical and significant hardship." Id. at 484.

_____

manner as to give rise to protection by the Due Process Clause of its own force." Sandin, 515 U.S. at 484. Examples would be involuntary administration of psychotropic medication, see Washington v. Harper, 494 U.S. 210, 221-22 (1990), or involuntary transfer to a state mental hospital for treatment, see Vitek v. Jones, 445 U.S. 480, 494 (1980). Mitchell does not contend that his transfer falls into such a category.

10

In deciding whether a protected liberty interest exists under Sandin, we consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. See Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000). Not surprisingly, our cases engaging in this inquiry have reached differing outcomes, reflecting the fact-specific nature of the Sandin test. Compare Leamer v. Fauver, 288 F.3d 532, 545 (3d Cir. 2002) (denial of the right to participate in a sex offender treatment program that was "mandated and promised" by New Jersey law implicated a protected liberty interest, and

Shoats, 213 F.3d at 144 (eight years in administrative confinement, during which inmate was locked in his cell for all but two hours per week, denied contact with his family, and prohibited from visiting the library or "participating in any education, vocational, or other organization activities," clearly implicated a protected liberty interest), with Smith, 293 F.3d at 645, 654 (seven months in disciplinary confinement did not implicate a liberty interest), Torres v. Fauver, 292 F.3d 141, 151-52 (3d Cir. 2002) (disciplinary detention for fifteen days and administrative segregation for 120 days was not atypical treatment in New Jersey prisons and therefore did not implicate a protected liberty interest), and Griffin v. Vaughn, 112 F.3d 703, 706-09 (3d Cir. 1997) (administrative detention, which imposed strict restrictions on outside contact and personal conveniences, did not implicate a protected liberty interest).

This case appears to bear some similarity to Griffin, which also involved a Graterford inmate. We held that Griffin, who was detained for fifteen months in administrative custody under restrictions comparable to those here, did not have a liberty interest in avoiding that confinement. See id. The differences Mitchell has thus far raised between his case and Griffin appear, without more, constitutionally insignificant. For example, inmates in disciplinary custody5 like Mitchell are permitted only one

_____

5. Disciplinary custody is the "maximum restrictive status of confinement" for inmates in the Pennsylvania prison system. DC-ADM 801 IV(B). Administrative custody is a "status of confinement for non-disciplinary reasons which provides closer supervision, control, and protection than is provided in general population." Commonwealth of Pa., Dep't of Corr., Administrative Custody Procedures, Policy Statement DC-ADM 802 IV(A) (Oct. 29, 1992).

11

visitor every month and one pack of cigarettes every two weeks, DC-ADM 801 VI(D)(2), (4), whereas inmates in administrative custody like Griffin are allowed one visitor and two packs of cigarettes per week, Commonwealth of Pa., Dep't of Corr., Administrative Custody Procedures, Policy Statement DC-ADM 802 V(A)(1), (3) (Oct. 29, 1992). This marginal difference does not appear to cross the constitutional line. Moreover, the prisoner in Sandin, whom the Supreme Court held did not bear "atypical and significant hardship," Sandin, 515 U.S. at 484, was, like Mitchell, in disciplinary custody.

However, apparent similarities between Griffin and this case notwithstanding, given this case's procedural posture and the fact that Mitchell prepared his complaint pro se, the record is not sufficiently developed for us to determine whether there were other features of Mitchell's confinement that meaningfully distinguished his situation from that in Griffin. See Perkins v. Kan. Dep't of Corr. , 165 F.3d 803, 809 (10th Cir. 1999) (reversing district court's sua sponte dismissal because the court "did not have the evidence

before it from which it could engage in the analysis required by Sandin"); Whitford v. Boglino, 63 F.3d 527, 533 (7th Cir. 1995) (same). Given the "fact-intensive inquiry" implied by Sandin, see Ayers v. Ryan, 152 F.3d 77, 83 (2d Cir. 1998), we remand for development of the record. 6

D. Emotional Injury

Section 803(d) of the Prison Litigation Reform Act, codified at 42 U.S.C. S 1997e(e), predicates a prisoner's claim for mental or emotional injury suffered while in custody on a showing of accompanying physical injury.7 The District Court, citing this provision, dismissed Mitchell's complaint to the extent it sought relief for

---

6. In performing the inquiry Sandin requires, the District Court on remand will need to consider whether the deplorable conditions of Mitchell's cell during a portion of his disciplinary confinement implicated a protected liberty interest.

7. 42 U.S.C. 1997e(e) states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

12

"emotional trauma." Implicit in this dismissal is the determination that Mitchell has not alleged a physical injury. Mitchell, however, argues that the allegations in his conditions-of-confinement claim -- that he was deprived of food, drink, and sleep for four days -- describe physical injuries. Moreover, he contends that any physical injury, however minor, satisfies S 1997e(e) because that statutory section contains no requirement that the injury be more than de minimis. We hold that Mitchell has not stated a claim for physical injury, but grant him leave to amend his complaint in order to do so. We also agree with other circuits that have read 1997e(e) to require more than a de minimis physical injury before an emotional injury may be alleged.

1. The Scope of S 1997e(e)

Section 1997e(e)'s requirement that a prisoner demonstrate physical injury before he can recover for mental or emotional injury applies only to claims for compensatory damages. Claims seeking nominal or punitive damages are typically not "for" mental or emotional injury but rather "to vindicate constitutional rights" or "to deter or punish egregious violations of constitutional rights," respectively. See Allah v. Al-Hafeez, 226 F.3d 247, 252 (3d Cir. 2000). Accordingly, regardless how we construe S 1997e(e)'s physical injury requirement, it will not affect Mitchell's ability to seek nominal or punitive damages for violations of his constitutional rights.8

We also agree with several other courts of appeals that

S 1997e(e) does not apply to claims seeking injunctive or declaratory relief.9 See Thompson v. Carter, 284 F.3d 411,

---

8. Mitchell's complaint specifically requests punitive damages but not nominal damages. As for the latter, however, "it is not necessary to allege nominal damages." Allah, 226 F.3d at 251 (quoting Basista v. Weir, 340 F.2d 74, 87 (3d Cir. 1965)) (internal quotation marks omitted). Moreover, Mitchell's complaint seeks "other relief as it may appear the plaintiff is entitled." We construe this "catch-all" prayer broadly to include a request for nominal damages. Furthermore, he has requested nominal damages in this appeal.

9. We express no opinion, however, as to whether Mitchell has standing to bring a claim for equitable relief in light of the requirement, enunciated in Los Angeles v. Lyons, 461 U.S. 95, 105 (1983), that a plaintiff seeking equitable relief demonstrate that his injury is likely to be repeated.

13

418 (2d Cir. 2002) ("Section 1997e(e) does not prevent a prisoner from obtaining injunctive or declaratory relief."); Harris v. Garner, 190 F.3d 1279, 1288 (11th Cir. 1999), vacated and reh'g en banc granted, 197 F.3d 1059 (11th Cir. 1999), reinstated in part on reh'g, 216 F.3d 970 (11th Cir. 2000) (en banc), cert. denied, 532 U.S. 1065 (2001) (same); Harper v. Showers, 174 F.3d. 716, 719 (5th Cir. 1999) (same); Perkins v. Kan. Dep't of Corr., 165 F.3d 803, 808 (10th Cir. 1999) (same); Davis v. Dist. of Columbia, 158 F.3d 1342, 1346 (D.C. Cir. 1998) (same); Zehner v. Trigg, 133 F.3d 459, 462-63 (7th Cir. 1997) (same). Again, such claims seek not to remedy mental injury suffered but rather relief from ongoing or future constitutional violations. Moreover, S 1997e(e)'s reference to remedies for mental injuries "suffered" -- in the past tense-- implies that it does not restrict prospective equitable relief. See Harris, 190 F.3d at 1288; Davis, 158 F.3d at 1346. 10

2. Physical injury requirement

The Commonwealth argues that Mitchell's allegations that he was deprived of food, drink, and sleep for four days do not describe a physical injury. Mitchell counters that physical injury -- including starvation, dehydration, unconsciousness, pain, and hypoglycemia -- follow inevitably from the conditions he alleges, and that he should not be penalized for inartful pleading. He notes also that his complaint alleged that these deprivations placed his "life and health in jeopardy." Finally, he argues that, if necessary, he could easily amend his complaint to state physical injuries.

Loss of food, water, and sleep are not themselves physical injuries. However, physical injuries could result from such deprivation after four days. While no physical injuries were alleged in Mitchell's complaint, to the extent that they can be included in good faith in an amended complaint, Mitchell is permitted that opportunity to amend.

---

10. We also observe that, apart from his claims for mental injury, Mitchell seeks damages for loss of "status, custody level and any chance at commutation." These requests -- unrelated to mental injury -- are not affected by S 1997e(e)'s requirements.

14

3. The de minimis standard

If in an amended complaint Mitchell sufficiently alleges physical injury, an additional issue occurs: under S 1997e(e), must that physical injury be more than de minimis before he can assert emotional injury? As this is a question of statutory interpretation, it is subject to plenary review. See Gibbs v. Cross, 160 F.3d 962, 964 (3d Cir. 1998).

Other courts of appeals have read 1997e(e) to require a less-than-significant-but-more-than-de minimis physical injury as a predicate to allowing the successful pleading of an emotional injury. See Oliver v. Keller, 289 F.3d 623, 626-28 (9th Cir. 2002); Harris, 190 F.3d at 1286-87 (11th Cir.); Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997).11 In Siglar, the Fifth Circuit based its holding on the fact that the Circuit's Eighth Amendment jurisprudence requires more than a de minimis, but not a significant, physical injury. Siglar, 112 F.3d at 193. The Eleventh Circuit in Harris followed Siglar. The Harris Court also found significant that, in enacting 1997e(e), Congress sought to curtail frivolous prisoner litigation. Reading 1997e(e) to find any allegation of physical injury sufficient would "undermine the statute's essential purpose." Harris, 190 F.3d at 1286. It would also make "no sense in light of our basic understanding that 'routine discomfort is part of the penalty that criminal offenders pay for their offenses against society.' " Id. (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). The Oliver Court reached the same conclusion, but rejected the Fifth and Eleventh Circuits' reliance on Eighth Amendment jurisprudence.12Oliver, 289 F.3d at

---

11. The Ninth Circuit stated in Oliver, 289 F.3d at 627, that the Second Circuit has also adopted the de minimis standard in Liner v. Goord, 196 F.3d 132, 135 (2d Cir. 1999), when the latter court wrote: "Certainly, the alleged sexual assaults would constitute more than de minimis injury if they occurred. Cf. Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (relying on Eighth Amendment jurisprudence, court holds that physical injury required by S 1997e(e) must simply be more than de minimis)." However, we do not read this statement as adopting any particular standard, de minimis or otherwise.
12. The Court concluded that the Fifth Circuit did not accurately describe the Eighth Amendment standard set out in Hudson v. McMillian, 503 U.S. 1 (1992), which requires more than de minimis physical force -- not more than de minimis physical injury -- to state an Eighth Amendment claim.

15

628. Rather, Oliver found persuasive that Congress intended to reduce the volume of frivolous prisoner suits, id. at 627-28, and rejected the notion that 1997e(e)'s plain meaning is clear, see id. at 628 n.6.

Two canons of statutory construction drive our analysis. First, "the starting point for interpreting a statute is the language of the statute itself." Smith v. Fid. Consumer Disc. Co., 898 F.2d 907, 909 (3d Cir. 1990) (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)). We do not look past the plain meaning unless it produces a result "demonstrably at odds with the intentions of its drafters," BFP v. Resolution Trust Corp., 511 U.S. 531, 563 (1994) (internal quotation marks omitted), or an outcome "so bizarre that Congress could not have intended it," Demarest v. Manspeaker, 498 U.S. 184, 191 (1991) (internal quotation marks omitted). Second, we attempt to ascribe meaning to each statutory provision. Newmark v. Principi, 283 F.3d 172, 176 (3d Cir. 2002) ("It is incumbent upon courts to read each statutory provision as having meaning, and to construe the statute so the 'meaning of each word inform[s] the others and all in their aggregate tak[e] their purport from the setting in which they are used.' ") (quoting U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., 508 U.S. 439, 454 (1993)) (internal quotation marks omitted) (alterations in original).

We believe that reading 1997e(e) to allow a plaintiff to allege any physical injury, no matter how minor, would produce an unintended (indeed absurd) result. Were we not to read 1997(e) as requiring more than a de minimis physical injury, we would turn its physical injury prerequisite into a mere pleading requirement, thereby rendering the requirement meaningless as a practical matter. Another prisoner might be able to assert an emotional injury by pleading that he received a paper cut, for example. This result runs counter to Congress's intent "to curtail frivolous and abusive prisoner litigation." Harris, 190 F.3d at 1286 (quoting Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998)); see 141 Cong. Rec. S7525 (daily ed. May 25, 1995) (statement of Senator Dole). In so doing, Congress noted that, "unlike physical injuries, emotional injuries are inherently difficult to verify and

16

therefore tend to be concocted for frivolous suits." Dawes v. Walker, 239 F.3d 489, 496 (2d Cir. 2001) (Walker, J.). On the other hand, we do not adopt a test that would prevent those experiencing real physical injury at the hands of government officials from pursuing their rights. We therefore follow the approach of the Fifth, Ninth, and Eleventh Circuits in requiring a less-than-significant-but-more-than-de minimis physical injury as a predicate to allegations of emotional injury.13

Because this case has come to us at the pleading stage, and because Mitchell's complaint does not specifically

describe the extent of his physical injuries, we are not able to determine whether his injuries are more than de minimis. Thus, the District Court will need to address on remand this question as well. Mitchell's amending his complaint to allege more specifically the physical injuries he suffered might facilitate this inquiry.

IV. Conclusion

Mitchell has exhausted the available administrative remedies on his conditions-of-confinement claim as required by S 1997e(a) and has stated a nonfrivolous retaliation claim. On remand, the District Court should also determine whether Mitchell has been subjected to "atypical and significant hardship" implicating a protected liberty interest that triggers due process rights at his disciplinary hearing, and, if so, whether those rights were violated. Finally, he is given the opportunity to amend his complaint

---

13. Our requirement of more than de minimis  physical injury for S 1997e(e) claims is not based on an analogy to Eighth Amendment jurisprudence, as is true in the Fifth and Eleventh Circuits. See Harris, 190 F.3d at 1286-87; Siglar, 112 F.3d at 193. Section 1997e(e)'s requirement is not limited to suits alleging Eighth Amendment violations. See, e.g., Thompson, 284 F.3d at 415-17 (due process claim); Allah, 226 F.3d at 250 (First Amendment claim). Thus, while in Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002), we refused to apply a more-than-de minimis-injury requirement in the Eighth Amendment context -- holding instead that the Eighth Amendment was triggered by more than de minimis force -- that holding does not inform our analysis of the 1997e(e) issue here.

17

to allege physical injury within the meaning of S 1997e(e). If his amended complaint alleges physical injury, the District Court must determine whether it is more than de minimis as a predicate to asserting emotional injury. In this context, we reverse the District Court's dismissal of the complaint and remand for further proceedings not inconsistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

18