**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2176
_____

MICHAEL HINTON,
                              Appellant

v.

TIMOTHY MARK, Chief Hearing Examiner; RAYMOND SOBINA, Superintendent;
PATTI MCKISSOCH, Hearing Examiner; MR. PATZ, Psychologist;
SANDRA GORNIAK, Accountant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 10-cv-00305)
District Judge:  Honorable Kim R. Gibson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 12, 2013
Before:  FUENTES, GREENBERG and VAN ANTWERPEN, Circuit Judges

(Opinion filed: November 13, 2013)
_____

OPINION
_____

PER CURIAM

        Michael Hinton, a Pennsylvania state prisoner proceeding pro se, appeals an order

of the United States District Court for the Western District of Pennsylvania that sua

sponte dismissed his civil rights action. For the reasons below, we will vacate the judgment of the District Court and remand for further proceedings.

In 2010, Hinton filed a complaint, which he later amended, pursuant to 42 U.S.C. § 1983, alleging that prison officials failed to prevent his suicide attempt, improperly prevented him from sending money from his prison account to hire an attorney, and violated his constitutional rights at subsequent prison hearings. A Magistrate Judge recommended dismissing the complaint sua sponte for failure to state a claim. The District Court adopted that recommendation and denied further leave to amend the complaint. Hinton appealed.[1]

Hinton claimed that he has a "history of suicide attempts . . . based on [his] mental illness." Compl., ¶ 21 (Dist. Ct. Doc. 1-2). While incarcerated at SCI-Albion on January 2, 2009, Hinton pressed an "emergency call button" in his cell. When a corrections officer responded, Hinton stated that he was contemplating suicide because he had recently learned about the death of a family member. Consequently, Mr. Patz, a prison psychologist, went to see Hinton in his cell. When Hinton repeated his suicide threat to Patz, Patz "told [Hinton] that the psychiatric observation cell was full [and] that [Hinton] has to be cool because [Patz] was getting ready to leave for today [and] could not do anything until Monday." Compl. ¶ 16. Later, Hinton took nine Sinequan pills in an

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review of the District Court's sua sponte dismissal for failure to state a claim. See Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). In deciding whether the District Court's dismissal of Hintons' complaint was proper, we "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

attempt to kill himself. A corrections officer who witnessed the suicide attempt contacted the prison medical staff, who had Hinton transported to the hospital. He remained in the hospital until January 4, 2009.

The Magistrate Judge concluded that "Hinton alleges at most that Patz failed to take additional steps that a reasonable person might have taken to prevent Hinton's alleged suicide attempt. If Hinton had actually suffered harm[,] that might at most amount to an allegation of negligence, but not deliberate indifference."[2] The Magistrate did not specifically consider the three elements that plaintiffs in prison suicide cases bear the burden of establishing: "(1) the detainee had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference' to the detainee's particular vulnerability."[3] Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting Colburn v. Upper Darby Twp., 838 F.2d 663, 669 (3d Cir. 1988)).

Hinton's allegations state a claim under this standard. Hinton announced that he intended to kill himself, which indicates a "strong likelihood, rather than a mere

---

[2] To the extent that the Magistrate Judge concluded that Hinton's claim failed because he did not satisfy the physical injury requirement of 42 U.S.C. § 1997e(e), this was error. Cf. Mitchell v. Horn, 318 F.3d 523, 536 (3d Cir. 2003) ("requiring a less-than-significant-but-more-than-de minimis physical injury as a predicate to allegations of emotional injury.").

[3] Although this standard is framed in terms of pretrial detainees, we note that the same standard may apply to convicted prisoners. See Woloszyn v. County of Lawrence, 396 F.3d 314, 319 n.5 (3d Cir. 2005) (noting that "in developing our jurisprudence on pre-trial detainees' suicides we looked to the Eighth Amendment, which prohibits the infliction of cruel and unusual punishment on convicted prisoners . . . .").

possibility, that self-inflicted harm will occur." Colburn, 946 F.2d at 1024 (quoting

Torraco v. Maloney, 923 F.2d 231, 236 (1st Cir. 1991)). Patz was clearly aware of this

likelihood. He had been summoned to Hinton's cell by a corrections officer who had

responded to Hinton's emergency call. Hinton then directly told Patz that he was

suicidal. Hinton claims that Patz knew about his history of suicide attempts and was

aware that one of his family members had recently died, factors which arguably increase

the likelihood of self-harm. Am. Compl. ¶ 1 (Dist. Ct. Doc. No. 11). These allegations

demonstrate that Patz knew that Hinton had a "particular vulnerability to suicide."

Colburn, 946 F.2d at 1025 (noting that "[t]he strong likelihood of suicide must be so

obvious that a lay person would easily recognize the necessity for preventative action; the

risk of self-inflicted injury must not only be great, but also sufficiently apparent that a lay

custodian's failure to appreciate it evidences an absence of any concern for the welfare of

his or her charges."). Moreover, Patz arguably acted with reckless indifference. He

allegedly considered placing Hinton in a "psychiatric observation cell," but did not do so

because those cells were full. Instead, Patz noted that he was getting ready to leave for

the day (it was a Friday), stated that he could not do anything until Monday, and simply

counseled Hinton to "be cool." Under these circumstances, it was error to sua sponte

dismiss the complaint for failure to state a claim. See Colburn, 838 F.2d at 669 (3d Cir.

1988) (stating that "failure to take any steps to save a suicidal [inmate] from injuring

himself may also constitute" a constitutional violation.).

     Hinton was "given a misconduct" for his suicide attempt. Compl. ¶ 15. A

disciplinary hearing was held on January 9, 2009, and Hinton pleaded guilty. Id. at ¶ 16.

4

He was ordered to serve 90 days in disciplinary confinement and his prison account was "assess[ed] [for] any costs incurred as a result of his actions." See Am. Compl., Ex. A (Dist. Ct. Doc. No. 7-1). The Department of Corrections ("DOC") notified Hinton that a hearing would be held to determine the amount of money that would be assessed from his account. He was assessed a fee of $6318.30, and his rate of payment was set at 30%. See Objections to Report and Recommendation ("R&R"), Ex. A (Dist. Ct. Doc. No. 14-1). Hinton also claimed that a prison accountant, Sandra Gorniak, blocked his attempt to send $570 from his prison account to his family to hire a lawyer to represent him at that hearing. See Am. Compl., ¶ 7 (Dist. Ct. Doc. No. 7).

With respect to the attempted $570 withdrawal, the Magistrate Judge held that Hinton's claims were "implausible."[4] We disagree. To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). It is not implausible that Gorniak prevented Hinton from withdrawing money from his prison account. Moreover, such action can constitute a due process violation. See Reynolds v. Wagner, 128 F.3d 166, 179 (3d Cir. 1997) (recognizing that inmates have a property interest in their prison account funds); see also Burns v. PA Dept. of Corr., 544 F.3d 279, 291 (3d Cir. 2008) (holding that assessment of prison funds, as distinguished from an actual deduction or seizure, constituted a protected property interest for purposes of procedural due process).

_____

[4] The Magistrate Judge also noted that Hinton "does not even identify his counsel." It is not clear, however, why such identification is necessary to state a claim.

The Magistrate Judge also rejected Hinton's due process claim pertaining to the assessment of his prison account for medical costs related to his suicide attempt. "[C]harging inmates for medical fees is not unconstitutional *per se*[,]" and due process may be satisfied if the inmate has notice of the fee policy and access to post-deprivation remedies. Reynolds, 128 F.3d at 179-81. Under Pennsylvania law, the DOC "will charge a fee to an inmate for . . . [m]edical service provided to the inmate as the result of a self-inflicted injury . . . ." 37 Pa. Code § 93.12(c)(2). Whether an inmate is responsible for that fee is determined at a disciplinary hearing, while the amount of that fee is separately determined at what is known as a "Holloway hearing." Burns v. PA Dept. of Corr., 642 F.3d 163, 178-79 (3d Cir. 2011).

Hinton claims that he "never had a hearing" to adjudicate whether his prison account could be debited. Am. Compl., ¶ 4 (Dist. Ct. Doc. No. 11). In support of this assertion, Hinton notes that the Misconduct Number on the Disciplinary Hearing Report (B046684) does not match the Misconduct Number listed on the Holloway hearing notice (A466795). See Am. Compl., Exs. A & C (Dist. Ct. Doc. No. 7-1). If, as the Magistrate Judge concluded, this was simply a clerical error, it is likely that there was no due process violation. Notably, the Disciplinary Hearing Report states, "assess inmate's account any costs incurred as a result of his actions."[5] But Hinton asserts that the charge that he pleaded guilty to at the Disciplinary Hearing (identified on the Report simply as "36")

---

[5] This statement undermines Hinton's allegation that the Report fails to "include a statement describing the item . . . or the reimbursement that may be ordered . . . ." Am. Compl., ¶ 4 (Dist. Ct. Doc. No. 11).

6

pertained to possession of contraband, and that the DOC issued a separate Misconduct Number (A842593) for offenses related to his suicide attempt. It could be that the possession of contraband charge was related to the Sinequan pills ingested by Hinton, and that his guilty plea to that charge was sufficient to support the prison account assessment sanction.

Given the limited record, however, it is difficult to sort out this claim. The Magistrate Judge avoided the shortcomings in the record by concluding that Hinton "does not allege that any amount was assessed before his Holloway hearing, nor even that any amount has been taken from his account since then." Clearly, though, Hinton asserted that money was withdrawn from his prison account to pay the medical costs. See Am. Compl., ¶ 12 (Dist. Ct. Doc. No. 11) (stating that a defendant "even went as far as to . . . go on in deducting and taking funds for medical expenses unjustly."); Objections to R&R, Exhibits A-1 to A-3 (Dist. Ct. Doc. No. 14-1) (copies of inmate account statements listing deductions for "medical costs"). Based on the possibility that Hinton was not afforded an opportunity to challenge whether his prison account should be assessed, we conclude that this claim was not suitable for sua sponte dismissal.

For the foregoing reasons, we will vacate the District Court's judgment and remand for further proceedings consistent with this opinion.[6]

---

[6] We grant Hinton's motion to supplement the appendix with an affidavit that was submitted to the District Court. Fed. R. App. P. 10(e)(2)(C). Hinton's "Motion to Response to Appellant Brief," which requests sanctions against the Appellees for failing to file a brief, is denied. We also deny Hinton's request to have the Department of Corrections cease deducting filing fees from his prison account pending the outcome of this appeal.