NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-1803
_____


KEVIN C. BRATHWAITE,

Appellant

v.

WARDEN PERRY PHELPS; DEPUTY WARDEN DAVID PIERCE;
DEPUTY CHRISTOPHER KLIEN; JAMES SCARBOUROUGH;
MARCELLO RISPOLI; KAREN HAWKINS; LT. FURMAN;
RONALD HOSTERMAN; LINDA KEMP; LARRY SAVAGE;
DELAWARE DEPARTMENT OF CORRECTIONS; DR. DESROSIERS;
NURSE CAROL BIANNCHI

_____

On Appeal from the United States District Court
for the District of Delaware
(D. C. Civil Action No. 1-10-cv-00646)
District Judge: Honorable Gregory M. Sleet

_____

Argued on January 8, 2018

Before: JORDAN, ROTH, <u>Circuit Judges</u> and *STEARNS, <u>District Judge</u>

(Opinion filed May 10, 2018)

_____

* The Honorable Richard G. Stearns, Judge of the United States District Court for the
District of Massachusetts, sitting by designation

Justin E. Kerner, Esq.                    (**ARGUED**)
Haley D. Torrey, Esq.
DLA Piper
1650 Market Street
One Liberty Place, 49th Floor
Philadelphia, PA 19103

      Counsel for Appellant


Daniel A. Griffith, Esq.                  (**ARGUED**)
Scott G. Wilcox, Esq.
Whiteford, Taylor & Preston
405 North King Street
The Renaissance Centre, Suite 500
Wilmington, DE 19801

      Counsel for Appellees Carol Biannchi
      and Dr. Desrosiers

Joseph C. Handlon, Esq.                   (**ARGUED**)
Delaware Department of Justice
820 North French Street
Carvel Office Building
Wilmington, DE 19801

      Counsel for Appellees Warden James T. Vaughn Correctional Center,
      David Pierce, Scarbourough, Linda Kemp and Larry Savage

Ophelia M. Waters, Esq.
Delaware Department of Justice
820 North French Street
Carvel Office Building
Wilmington, DE 19801

      Counsel for Appellees Christopher Klien, Karen Hawkins
      and Lt. Furman

---

OPINION[**]

---

ROTH, <u>Circuit Judge</u>

Kevin C. Brathwaite, an inmate at the James T. Vaughn Correctional Center

(Prison) in Smyrna, Delaware, is serving a life sentence for several rapes and related

felonies. He appeals the District Court's rulings, relating to his claims that the prison's

staff and officials violated his due process right by placing him in the prison's security

housing unit (SHU) for almost seven years without any form of review, as well as

violating his Eighth Amendment right to adequate medical attention for his serious

medical needs. The District Court ruled that Brathwaite's due process claim was

frivolous and, later, that Brathwaite did not present the requisite expert evidence to

demonstrate his medical-related claims. For the reasons stated below, we will vacate

those rulings and remand both claims.

## I. FACTS

In August 2010, Brathwaite commenced this civil rights lawsuit under 42 U.S.C. §

1983 against certain officials at the Prison (Prison Defendants), proceeding *pro se* and *in*

*forma pauperis* and alleging violations of his due process right. Specifically, Brathwaite

alleged that the Prison Defendants placed him in the SHU from 2004 through 2010 and

denied him any housing classification hearing or review, notwithstanding the fact that

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Brathwaite had completed the Prison's internal prerequisites for being restored to general population housing. In October 2010, Brathwaite amended his complaint to add claims against additional individuals and the Delaware Department of Corrections.

A week later, Brathwaite filed a Second Amended Complaint, this time raising Eighth Amendment claims against certain medical staff at the Prison (Medical Defendants). Brathwaite alleged that the Medical Defendants were deliberately indifferent to his medical needs stemming from a degenerative shoulder condition.[1] Specifically, Brathwaite alleged that the Medical Defendants:

1.      Disregarded and failed to renew a "medical memorandum" that documented Brathwaite's diagnosed degenerative shoulder condition and instructed Prison personnel to restrain Brathwaite using two, linked sets of handcuffs instead of one set when restraining Brathwaite;

2.      Refused to deliver a mattress that had been recommended by an outside medical professional to address Brathwaite's spinal issues;

3.      Refused to allow Brathwaite to see his medication before it was crushed and provided to him, despite an administrative order that instructed otherwise, due to the fact that Brathwaite had previously been provided the wrong medication through the pill crushing process; and

4.      Withheld his prescribed pain medication without a valid reason.

---

[1] Although the Eighth Amendment is applicable to the states through the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 675 (1962), for the sake of simplicity, we refer to Brathwaite's claims against the Medical Defendants as "Eighth Amendment claims."

The District Court reviewed Brathwaite's Complaint pursuant to 28 U.S.C. § 1915 and § 1915A, and *sua sponte* dismissed his due process claim as frivolous. The District Court acknowledged that Brathwaite had spent almost seven years in the SHU, as well as eleven to twelve days in the "hole." It concluded, however, that, "[b]ased upon the relatively short time Brathwaite was confined to the 'hole,'"[2] Brathwaite's confinement did not constitute an atypical and significant hardship in relation to other prison conditions, the threshold for a due process violation. Specifically, the District Court did not examine whether Brathwaite's seven years in the SHU constituted an atypical and significant hardship. Because the District Court determined that Brathwaite did not have a constitutional right to a specific housing classification, the court also concluded that he was owed no process such as classification hearings.

Following the District Court's *sua sponte* dismissal of Brathwaite's due process claim, only Brathwaite's Eighth Amendment claims against the Medical Defendants survived. While discovery was proceeding, Brathwaite moved the District Court for appointment of counsel to assist with discovery. The District Court denied his request, concluding that Brathwaite was able to represent himself, but the court said that it would revisit the issue "should the need for counsel arise later."[3]

After the close of discovery, the Medical Defendants filed a motion for partial summary judgment on Brathwaite's Eighth Amendment claims.[4] The District Court

---

[2] A.R. 17.
[3] A.R. 26.
[4] The Medical Defendants did not move for summary judgment on Brathwaite's claim relating to the denial of his pain medication.

denied summary judgment on all but Brathwaite's mattress-related claim because the three remaining claims raised triable issues of material fact.

Rather than proceed to trial, the Medical Defendants sought leave to file a "supplemental dispositive motion" to address whether Brathwaite could support his remaining deliberate indifference claims without expert testimony.[5] The District Court granted the Medical Defendants' request and re-opened discovery for an additional three and a half weeks. The Medical Defendants then sought summary judgment on the deliberate indifference claims on the ground that Brathwaite failed to support them with expert testimony. The District Court granted the motion, and specifically faulted Brathwaite for failing to secure expert testimony during the three and a half weeks of re-opened discovery.

Brathwaite appealed.[6]

## II. DID BRATHWAITE'S CONFINEMENT IN THE SHU VIOLATE DUE PROCESS?[7]

The District Court dismissed Brathwaite's due process claim as frivolous.[8] A claim is frivolous when it is "indisputably meritless" or "fantastic or delusional."[9] As we

---

[5] A.R. 390-91.

[6] We thank Brathwaite's counsel and his firm for accepting the *pro bono* appointment and for their very able representation. Lawyers who act *pro bono* provide the highest service that the bar can offer.

[7] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. Our jurisdiction pertains to all of Brathwaite's claims notwithstanding the fact that his notice of appeal specifies only the District Court's order of March 17, 2015 granting summary judgment. *See Pacitti v. Macy's*, 193 F.3d 766, 776 (3d Cir. 1999) (liberally construing the requirement in Rule 3(c) that the notice of appeal designate the orders being appealed).

stated in *Mitchell v. Horn,* "[w]e are especially careful when assessing frivolousness in the case of *in forma pauperis* complaints," and we construe *pro se* pleadings "nonrestrictively."[10]

To establish his due process claim, Brathwaite was required to show that (1) the state, through the duration and conditions of his confinement, imposed "atypical and significant hardship" on him giving rise to a protected liberty interest; and (2) the state deprived him of the process he was due to protect that interest.[11]

Brathwaite has sufficiently pled that the state imposed atypical hardship on him by placing him in the SHU for almost seven years without any meaningful review. We have held that this inquiry requires consideration of both the duration and conditions of the prisoner's confinement, in relation to other prison conditions.[12] Recently, we held in *Williams v. Sec'y Pennsylvania Dep't of Corr.* that solitary confinement for years on death row of an inmate, who is not presently subject to a penalty of death, is atypical if such confinement is essentially indefinite "with no ascertainable date for [his] release into the general population."[13, 14]

---

[8] Our review of the District Court's dismissal of Brathwaite's claim as frivolous under § 1915(e)(2) is plenary. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). We must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000) (citation omitted).

[9] *Id.*

[10] *Id.*

[11] *Sandin v. Conner*, 515 U.S. 472, 484, 486 (1995); *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000).

[12] *Mitchell*, 318 F.3d at 532.

[13] *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 562 (3d Cir. 2017).

[14] The conditions on death row are in relevant ways similar to the conditions in the SHU.

7

The District Court concluded that the ten to twelve days that Brathwaite was confined in the "hole" was not atypical, but it failed to analyze Brathwaite's claim that he spent almost seven years in the SHU without review. In his complaint, Brathwaite alleged that (1) he was listed on the "remain in SHU" list, and (2) he had not been relocated to the general population even though he had completed the Prison's requisite programs for removal from the SHU. As in *Williams*, Brathwaite's confinement in segregated housing was allegedly indefinite and therefore atypical.[15] Brathwaite's due process claim therefore was not frivolous.

The record, however, has not been adequately developed as to whether the conditions of Brathwaite's confinement constituted significant hardship. Without this information, we are unable to conduct the "fact-intensive inquiry" necessary to determine whether Brathwaite has identified a state-created liberty interest.[16] As we did in *Mitchell*, we will remand Brathwaite's due process claim to the District Court for further proceedings concerning the conditions of Brathwaite's confinement.[17] If the District Court concludes that Brathwaite's SHU confinement imposed an "atypical and significant hardship" on him, creating a liberty interest, the court should also determine whether the

---

[15] *Williams*, 848 F.3d at 562.
[16] *Mitchell*, 318 F.3d at 533 (internal citation omitted).
[17] *Id.*

Prison Defendants violated this interest by failing to provide any review to Brathwaite during his SHU confinement.[18]

### III. WAS EXPERT MEDICAL TESTIMONY REQUIRED?

The District Court concluded that Brathwaite's Eighth Amendment claims against the Medical Defendants could not proceed to trial because one claim was disagreement with medical treatment and thereby not a constitutional violation and because Brathwaite had failed to support the other three claims with expert testimony. The Eighth Amendment protects prisoners against prison official conduct that evidences "deliberate indifference to serious medical needs."[19] To state a claim for deliberate indifference, a prisoner must make "(1) a subjective showing that the defendants were deliberately indifferent to [his or her] medical needs and (2) an objective showing that those needs were serious."[20] Though prison medical staff are usually afforded "considerable latitude in the diagnosis and treatment of prisoners," no such deference attaches when the medical staff has intentionally refused to provide care to a prisoner.[21]

---

[18] Even if Brathwaite received a proper classification hearing after filing his Complaint, this fact would not moot his claim for damages for the period of time he spent in the SHU without meaningful review. *See generally Melvin v. Nickolopoulos*, 864 F.2d 301, 304 (3d Cir. 1988) (where state hearing eventually held, prisoner may still be entitled to damages for amount of time in confinement before hearing date); 13C Fed. Prac. & Proc. Juris. § 3533.3 (3d ed.) ("The availability of damages or other monetary relief almost always avoids mootness.").

[19] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

[20] *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (internal quotation marks omitted).

[21] *Palakovic v. Wetzel*, 854 F.3d 209, 227-28 (3d Cir. 2017).

Summary judgment should not have been granted for the Medical Defendants on three[22] of Brathwaite's Eighth Amendment claims.[23] The record indicates that the Medical Defendants refused to double-cuff Brathwaite, even though double-cuffing had been previously prescribed for Brathwaite's shoulder and back issues. The record also indicates that the Medical Defendants refused to crush Brathwaite's pills in front of him, despite instruction from the Prison's grievance committee, which determined that Brathwaite previously had been given the wrong medication in crushed form. Finally, it appears clear from the record that, after Brathwaite filed his pill-crushing complaint with the Prison's grievance committee, the Medical Defendants denied Brathwaite his pain medication altogether. As the District Court originally concluded on the Medical Defendants' first motion for summary judgment, "there remain genuine issues of fact" as to these claims.[24]

On the Medical Defendants' second motion for summary judgment, the District Court changed course and held that expert testimony was required for Brathwaite to create a triable issue of fact on his Eighth Amendment claims. It is not clear to us that expert testimony is actually required here. For example, expert testimony is not required

---

[22] The District Court properly granted summary judgment for the Medical Defendants on Brathwaite's mattress-related claim as based solely on Brathwaite's disagreement with the medical treatment he received, since the same doctor who originally prescribed the mattress changed his mind seven months later. A.R. 384; *see Pearson*, 850 F.3d at 535. We will therefore affirm this aspect of the District Court's ruling.

[23] "We exercise plenary review over a district court's order granting summary judgment, applying the same standard as the district court." *Pearson*, 850 F.3d at 533. Summary judgment will be granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

[24] *See* A.R. 383-86.

10

to demonstrate serious medical needs where the prisoner can show that his medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[25] Moreover, we recently held that a prisoner need not introduce expert testimony to establish that defendants demonstrated deliberate indifference when the claim is premised on the denial or delay of care.[26] Unlike claims sounding in the quality of care received, denial of care is not an "objective question typically beyond the competence of a non-medical professional."[27] Thus, the record must be further developed on this issue.

Brathwaite would have benefited from having counsel appointed to help him to determine whether expert testimony was needed and, if so, to obtain the requisite testimony. Cases like Brathwaite's are often complex and require the assistance of an attorney who can help secure expert testimony if it is needed.[28]

District courts have broad discretion in determining whether to appoint counsel[29] and can appoint counsel at any point in the litigation, even *sua sponte*.[30] As we held in *Tabron v. Grace*, "[i]f the district court determines that the plaintiff's claim has arguable

---

[25] *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation omitted); *see also Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017).

[26] *Pearson*, 850 F.3d at 535.

[27] *Id.* at 536.

[28] *See Montgomery v. Pinchak*, 294 F.3d 492, 498, 502 (3d Cir. 2002); *see also Parham v. Johnson*, 126 F.3d 454, 460 (3d Cir. 1997) ("This finding by the district court is especially startling because when the district court denied Parham's motion for court-appointed counsel, the district court stated that it did not seem likely that expert testimony would be needed in this case. Yet, in dismissing the case, the same district judge cited as a deficiency in Parham's case the lack of expert testimony, which the district judge now deemed essential.").

[29] *Montgomery*, 294 F.3d at 498.

[30] *Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993).

merit in fact and law, the court should then consider a number of additional factors that bear on the need for appointed counsel."[31] These factors include: 1) the plaintiff's ability to present his own case, 2) the complexity of the legal issues, 3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation, 4) the plaintiff's capacity to retain counsel on his own, 5) the extent to which a case is likely to turn on credibility determinations, and 6) whether the case will require expert witness testimony.[32]

As already addressed, three of Brathwaite's Eighth Amendment claims have arguable merit in fact and law. Brathwaite also meets the majority of the *Tabron* factors.

Primarily, Brathwaite was unable to present his own case, especially once the District Court determined that expert testimony was required for Brathwaite to make his Eighth Amendment claims. Other *Tabron* factors also indicate the need for appointed counsel. We have previously held that a deliberate indifference case like this one involves complex legal issues,[33] and may require expert testimony.[34] Additionally, the record reveals that Brathwaite cannot afford to retain his own counsel, as evidenced by Brathwaite's *in forma pauperis* status.[35]

In sum, the District Court should have appointed counsel for Brathwaite; it therefore abused its discretion by failing to do so. Even if the District Court did not deem

---

[31] *Id.* at 155.
[32] *Montgomery*, 294 F.3d at 499.
[33] *See Montgomery*, 294 F.3d at 502 ("[A] § 1983 civil rights case alleging deliberate indifference to a prisoner's serious medical needs can raise sufficiently complex legal issues to require appointment of counsel." (citing *Parham*, 126 F.3d at 459)).
[34] *See Parham*, 126 F.3d at 460.
[35] *See Montgomery*, 294 F.3d at 505.

it necessary at the time of Brathwaite's motion for appointed counsel, it should have appointed *pro bono* counsel when it determined that expert testimony would be necessary.[36]

## IV. CONCLUSION

For the above reasons, we will affirm the District Court's ruling as to Brathwaite's mattress-related claim and vacate the District Court's rulings on the remainder of the Eighth Amendment claims, as well as its rulings on Brathwaite's due process claim and request for appointed counsel, and we will remand the case to the District Court for further proceedings consistent with this opinion.

---

[36] *See also Tabron*, 6 F.3d at 156 (decision to appoint counsel can be made at any point in the litigation).