

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-28-2000

# Allah v. Seiverling

Precedential or Non-Precedential:

Docket 97-3627

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Allah v. Seiverling" (2000). *2000 Decisions.* Paper 208.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/208

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 28, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-3627

MICHAEL MALIK ALLAH,
        Appellant

v.

THOMAS SEIVERLING; ROBERT SPARBANIE;
JOHN D'ELETTO; BEN VARNER

COMMONWEALTH OF PENNSYLVANIA,
        Amicus Curiae
UNITED STATES OF AMERICA,
        Intervenor

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 97-cv-01696)
District Judge: Hon. Robert J. Cindrich

Argued July 20, 2000

Before: SLOVITER, NYGAARD and FUENTES,
Circuit Judges

(Filed September 28, 2000)

        Deena Jo Schneider
        Joseph T. Lukens (Argued)
        S. Jnatel Simmons
        Schnader Harrison Segal & Lewis
        Philadelphia, PA 19103

         Attorneys for Appellant

D. Michael Fisher
 Attorney General
J. Bart DeLone (Argued)
Calvin R. Koons
 Senior Deputy Attorney General
John G. Knorr, III
 Chief Deputy Attorney General
 Chief, Appellate Litigation Section
Office of Attorney General
Appellate Litigation Section
Harrisburg, PA 17120

 Attorneys for Amicus Curiae
on behalf of Appellees

David W. Ogden
 Acting Asistant Attorney General
Michael R. Stiles
 United States Attorney
John C. Hoyle
Susan L. Pacholski

 Attorney for Intervenor

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Michael Malik Allah appeals the District Court's order dismissing Allah's complaint before service on the ground that his claims are barred by the Supreme Court's decision in Sandin v. Connor, 515 U.S. 472 (1995). The appeal requires us to consider the effect of the Sandin decision on Allah's access-to-courts claims, including his claim that he was kept in administrative segregation in retaliation for filing civil rights lawsuits.

I.

Allah, who was granted leave to proceed in forma pauperis, filed his pro se complaint on September 19, 1997 alleging that he was being kept in administrative segregation at S.C.I. Greene in retaliation for filing civil

2

rights lawsuits against prison officials at S.C.I. Frackville and S.C.I. Graterford, two prisons where he had earlier been housed, and that while he was kept in administrative segregation he was denied meaningful access to the courts.

According to his complaint, Allah was transferred from S.C.I. Frackville to S.C.I. Greene on July 9, 1997 and was placed in administrative segregation. He was told by the officer in charge that the officer "had not had a chance to review [his] records" but that Allah would be brought before the Program Review Committee ("PRC") the next day, July 10. App. at 10. Allah was brought before the PRC on July 15 and was told that the PRC still did not have his records but that he would be seen every 30 days. Allah alleges the PRC did have his records but kept him in administrative segregation in retaliation for filing lawsuits when he was housed at other prisons. He was again brought before the PRC on August 12, 1998 and denied release to the general population, with "[n]o valid reason given." App. at 11. On September 9, 1997, he was again brought before the PRC and denied release to the general population.

Allah alleges in his complaint that he is "unable to file and product [sic] briefs" in his criminal case and unable to conduct discovery in his civil rights cases while in administrative segregation at S.C.I. Greene. App. at 10. His complaint seeks relief in the form of compensation damages and punitive damages. In his briefs he asserts that he also seeks injunctive and declaratory relief.

On September 29, 1997, before service of the complaint, the Magistrate Judge recommended that the complaint be dismissed for failure to state a claim, stating:

> In Sandin v. Connor, 115 S. Ct. 2293 (1995), the Court held that housing an inmate in disciplinary custody did not impose such atypical and significant hardships on the inmate so as to invoke Constitutional protection. Thus, the plaintiff 's complaint here is without merit . . .

Report and Recommendation, Doc. # 6 (Sept. 29, 1997) at 2. The District Court adopted the Magistrate Judge's Report and Recommendation as the opinion of the court and ordered the complaint dismissed. Allah timely appealed.

This court appointed counsel to represent Allah on appeal.1 We also requested that the Commonwealth submit a brief and argue as amicus curiae.2 The appeal was consolidated with another brought by Allah in a separate case captioned Allah v. Al–Hafeez, No. 98–1385. The two consolidated appeals present distinct legal issues, and we address the issues in separate opinions.

Our review of the District Court's sua sponte dismissal for failure to state a claim, which was authorized by 28 U.S.C. S 1915(e)(2)(B)(ii) and 42 U.S.C. S 1997e(c)(2), like that for dismissal under Fed. R. Civ. P. 12(b)(6), is plenary. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). "[W]e must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Nami v. Fauver, 82 F.2d 63, 65 (3d Cir. 1996).

II.

Allah alleges two claims in his complaint: that he was denied meaningful access to the courts while he was kept in administrative segregation and that he was kept in administrative segregation in retaliation for filing civil rights claims against prison officials at S.C.I. Frackville and S.C.I. Graterford. The District Court interpreted Sandin to

_____

1. We expressed our appreciation to this firm and others in note 4 of the companion opinion in Allah v. Al–Hafeez, No. 98–1385.

2. A motions panel of this court requested that the parties address several additional issues in their briefs, including, inter alia, whether any or all of Allah's claims are moot, whether Allah has exhausted available administrative remedies in accordance with 42 U.S.C.S 1997e(a), whether Allah's claims seeking monetary damages are barred by 42 U.S.C. S 1997e(e), and what standard should be applied to a claim alleging retaliation for exercising the right to petition the courts. For the most part, those issues are not directly presented by this appeal, and we accordingly do not decide them here. As for mootness, a jurisdictional issue, it is clear, and the parties do not dispute, that at least Allah's claims for damages survive his release from administrative segregation. See Weaver v. Wilcox, 650 F.2d 22, 27 n.13 (3d Cir. 1981) (stating that prisoner's transfer from the prison moots claim for injunctive and declaratory relief with respect to prison conditions but not claim for damages).

preclude both of these claims, apparently in the belief that Sandin stands for the principle that no claim arising out of administrative segregation can form the basis for a constitutional violation. We cannot agree with that interpretation of Sandin.

Sandin involved a S 1983 suit brought by a state prisoner against several prison officials alleging that they had violated his constitutional right to procedural due process by sentencing him to disciplinary segregation without permitting him to call certain witnesses. See 515 U.S. at 476. The Supreme Court noted in Sandin that under the procedure previously followed, if the Due Process Clause itself did not confer a liberty interest in a particular prison situation,[3] the federal courts would proceed to "examin[e] . . . the possibility that the State had created a liberty interest by virtue of its prison regulations. . . ." Id. at 480 (explaining the approach taken by the Court in Hewitt v. Helms, 459 U.S. 460 (1983)). The Supreme Court substantially modified that analysis in Sandin , holding that an examination of a state statute or regulation should not be conducted unless the challenged restraint on freedom "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. As the Court explained:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

_____

3. The Court has held that the Due Process Clause confers a liberty interest in certain situations. See, e.g., Washington v. Harper, 494 U.S. 210 (1990) (holding that an inmate has a liberty interest in being protected from the involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480 (1980) (holding that an inmate has a liberty interest in being free from involuntary transfer to mental hospital for treatment).

5

Id. at 483-84 (citations omitted). Applying this approach to the facts of the case before it, the Court held that"[the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," inasmuch as "[t]he regime to which [the prisoner] was subjected . . . was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." Id. at 486-87.

The Court's opinion makes clear that the decision does not foreclose other claims challenging the constitutionality of official actions. Specifically, it states:

> Prisoners . . . , of course, retain other protection from arbitrary state action even within the expected conditions of confinement. They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment where appropriate, and may draw upon internal prison grievance procedures and state judicial review where available.

Id. at 487 n.11.

Accordingly, we conclude that Allah's claim alleging denial of his constitutional right to meaningful access to the courts is not foreclosed by Sandin. In fact, the Commonwealth concedes as much in its brief, stating that the District Court "should have" considered that claim. See Amicus Br. at 27. It is well settled that prisoners have a constitutional right to access to the courts, which requires access to "adequate law libraries or adequate assistance from persons trained in the law" for filing challenges to criminal sentences, both direct and collateral, and civil rights actions. Bounds v. Smith, 430 U.S. 817, 828 (1977); see also Lewis v. Casey, 518 U.S. 343, 355 (1996) (recognizing that the Constitution requires that prisoners be provided the tools "that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement"); Wolff v. McDonnell, 418 U.S. 539, 579 (1974) (extending right of access to the courts, founded on the Due Process Clause, to prisoners filing actions under 42 U.S.C. S 1983 to

6

vindicate "basic constitutional rights"). 4 This right to access to the courts is distinct from any liberty interest in remaining free from administrative or disciplinary segregation. A claim founded on the right of access remains viable after Sandin.5

Nor does Sandin preclude Allah's claim alleging that he was kept in administrative segregation in retaliation for filing civil rights suits against prison officials. We have recognized that "[t]he right of access to the courts . . . must be freely exercisable without hindrance or fear of retaliation." Milhouse v. Carlson, 652 F.2d 371, 374 (3d Cir. 1981) (locating right to access the courts in a retaliation case in the First Amendment right to petition for redress of grievances); see also Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998) (stating that "[t]he reason why . . . retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right").

Sandin instructs that placement in administrative confinement will generally not create a liberty interest. See Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (applying Sandin and holding that conditions experienced by prisoner in administrative custody did not implicate liberty interest). Retaliation may be actionable, however, even when the retaliatory action does not involve a liberty interest. See, e.g., Stanley v. Litscher , 213 F.3d 340, 343

_____

4. The right to access to the courts has a number of constitutional roots, including the Due Process Clause and the First Amendment. See generally Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling sources of the right).

5. At argument, the Commonwealth suggested that Allah's access to courts claim should be dismissed for failure to allege actual injury, as required by Casey. Under Casey, in order to have standing to challenge prison conditions as denying meaningful access to the courts, a prisoner must plead facts to "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." 518 U.S. at 351. Allah alleges, inter alia, that while he was in administrative segregation he did not have access to trained legal aids and as a result was unable to file a brief in his post-conviction appeal, which he alleges was due on September 10, 1997, the day after the date of his complaint. Construing Allah's complaint liberally, that allegation is sufficient to state a claim under Casey.

(7th Cir. 2000) (holding that plaintiff stated claim for retaliatory transfer even though no liberty interest involved in transfer); Rouse v. Benson, 193 F.3d 936, 939 (8th Cir. 1999) (same). "[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Thaddeus-X v. Blatter , 175 F.3d 378, 386 (6th Cir. 1999) (en banc).

Our holding that claims alleging retaliation for the exercise of First Amendment rights survive Sandin is consistent with those circuits that have considered the issue. In Pratt v. Rowland, 65 F.3d 802, 806-07 (9th Cir. 1995), the Court of Appeals for the Ninth Circuit held that Sandin did not bar a claim alleging that a prisoner-plaintiff had been transferred and placed in a double cell in retaliation for a television interview that he had given. The court stated:

> To succeed on his retaliation claim, [the plaintiff] need not establish an independent constitutional interest in either assignment to a given prison or placement in a single cell, because the crux of his claim is that state officials violated his First Amendment rights by retaliating against him for his protected speech activities.

Id. at 806. In Babcock v. White, 102 F.3d 267, 274-75 (7th Cir. 1996), the Court of Appeals for the Seventh Circuit agreed, holding that a prisoner-plaintiff 's claim that a prison official had prevented an expeditious transfer in retaliation for his filing lawsuits against prison officials was actionable "even if [the prison official's] actions did not independently violate the Constitution" and thus was not barred by Sandin.

The Commonwealth argues that "the sense of the Sandin opinion" counsels us to hold that continued placement in administrative confinement can never amount to adverse action sufficient to support a retaliation claim. Amicus Br. at 18. As the Supreme Court recognized in its footnote in Sandin, however, "[p]risoners . . . retain other protection from arbitrary state action even within the expected

8

conditions of confinement." 515 U.S. 487 n.11 (emphasis added).

We recently explained this court's position on the adverse action prong of a retaliation claim in Suppan v. Dadonna, 203 F.3d 228 (3d Cir. 2000). There, we considered whether the defendants' action of placing plaintiffs lower on promotion ranking lists in retaliation for the exercise of their First Amendment free speech rights was sufficiently adverse to state a claim for retaliation. We held that it was, stating that a fact finder could conclude that"the alleged retaliatory conduct was sufficient `to deter a person of ordinary firmness' from exercising his First Amendment rights." Id. at 235 (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)). This same test has been applied in the prison context. See Thaddeus-X, 175 F.3d at 396-99; Crawford-El v. Britton, 93 F.3d 813, 826 (D.C. Cir. 1996) (en banc) (approving the Bart standard in the prison context), reversed on other grounds, 523 U.S. 574 (1998).

Although it is possible that in some cases placement in administrative segregation would not deter a prisoner of ordinary firmness from exercising his or her First Amendment rights, we cannot say that such action can never amount to adverse action. On the contrary, whether a prisoner-plaintiff has met that prong of his or her retaliation claim will depend on the facts of the particular case.

Here, Allah alleges that his confinement in administrative segregation resulted, inter alia, in reduced access to phone calls, reduced access to the commissary, reduced access to recreation, confinement in his cell for all butfive hours per week, denial of access to rehabilitative programs and, significantly, inadequate access to legal research materials and assistance. A fact finder could conclude from those facts that retaliatory continued placement in administrative confinement would "deter a person of ordinaryfirmness from exercising his First Amendment rights." Suppan, 203 F.3d at 235 (internal quotations omitted); see Thaddeus-X, 175 F.3d at 396 ("[A]n action comparable to transfer to administrative segregation would certainly be adverse.").

9

III.

For the reasons stated, we will vacate the order of the District Court sua sponte dismissing Allah's complaint as barred by Sandin and will remand for further proceedings not inconsistent with this opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

10