NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-1298

_____

QUINTEZ TALLEY,
Appellant

v.

MAJOR CLARK; LAURA BANTA; M. NASH; THOMAS GRENEVICH;
J. YODIS; JOSEPH DUPONT; PA DEPARTMENT OF CORRECTIONS;
JOHN E. WETZEL

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cv-05316)
District Judge: Honorable Timothy J. Savage

_____

Argued on January 20, 2021

Before: SMITH, *Chief Judge*, HARDIMAN, and ROTH, *Circuit Judges*.

(Filed: April 14, 2021)

Jacob I. Chefitz
Harry Sandick
Kathrina Szymborski [Argued]
Patterson Belknap Webb & Tyler
1133 Avenue of the Americas
New York, NY 10036

David M. Shapiro
Roderick and Solange MacArthur Justice Center
Northwestern University Pritzker School of Law
375 East Chicago Avenue

Chicago, IL 60611

*Counsel for Appellant*

Josh Shapiro
Claudia M. Tesoro [Argued]
J. Bart DeLone
Office of Attorney General of Pennsylvania
1600 Arch Street
Suite 300
Philadelphia, PA 19103

*Counsel for Appellees*

Eric S. Mattson
Benjamin I. Friedman
Sidley Austin
One South Dearborn Street
Chicago, IL 60603

J. Manuel Valle
Sidley Austin
1501 K Street, NW
Washington, DC 20005

*Counsel for Amici Curiae Professors and Practitioners of Psychiatry, Psychology, and Medicine in Support of Appellant*

———————

OPINION[*]

———————

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

HARDIMAN, *Circuit Judge*.

Quintez Talley appeals an order of the District Court dismissing his complaint against the Pennsylvania Department of Corrections (DOC) and various prison officials. We will reverse and remand.

I

A Pennsylvania prisoner, Talley has longstanding mental health problems. He tends to harm himself, often with fire, and he has tried to commit suicide by burning his mattress. Before May 2015, the DOC determined he had a "serious mental illness," which placed him in the highest mental health classification (D). In May 2015, the DOC downgraded Talley to level C, which meant that his mental illness no longer qualified as "serious." Talley remained on the C roster during the events relevant to this case.

Talley's case involves his treatment while incarcerated at Pennsylvania State Correctional Institutions Graterford and Fayette in 2018. Because the case was dismissed, we accept as true the facts pleaded in Talley's complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Near the end of his time at Graterford, Talley faced nine unspecified misconduct charges, apparently including sexual harassment, using obscene or inappropriate language to a staff member, refusing to obey an order, and destroying prison equipment (according to Talley, the latter was during a suicide attempt). While the charges were pending, Talley was placed on suicide watch in an isolated psychiatric observation cell without access to pens or pencils. Because he could not write a statement, request the

presence of witnesses, or appeal, Talley asked to postpone the misconduct hearing until after he left suicide watch. He also claimed he had not been properly notified of several of the charges against him.

Hearing Examiner J. Yodis obtained approval from his supervisor, Joseph Dupont, to deny Talley's request and proceed with the hearing. Yodis told Talley he could either attend the hearing or have Yodis conduct the proceedings without him, find him guilty of all nine charges, and give him the maximum punishment. Faced with this ultimatum, Talley waived his rights to submit statements and witness requests, and the hearing happened on January 22, 2018. Yodis sanctioned Talley to ten months' disciplinary custody for seven of the nine charged offenses.

Talley asked the members of the "Program Review Committee"—a group of prison officials who review the status of a prisoner's administrative segregation or disciplinary custody—to provide an assistant who could prepare a dictated appeal for him. The Committee members—M. Nash, Thomas Grenevich, Laura Banta, and Major Clark—refused, telling Talley that if he wanted to have the right to appeal like other prisoners, "maybe he . . . shouldn't say he was suicidal." App. 49.

On January 31—nine days after his initial misconduct hearing—Talley was transferred to SCI Fayette, where he was initially placed in another psychiatric observation cell. On February 5, Talley was released from the cell and was taken to the "Special Management Unit" (SMU).

The parties dispute the significance of this transfer. Talley claims the SMU, like disciplinary custody, is "a form of solitary confinement." Reply Br. 3. Appellees do not

dispute this, though they say the SMU was a change "for the better." Response Br. 32. Appellees also emphasize that SMU prisoners can return to the general population if they successfully complete steps in a behavior modification program.

Talley alleges that on February 8, Hearing Officer Yodis held another misconduct hearing—remotely—for the remaining two infractions Talley was charged with at Graterford. Yodis sanctioned Talley to an additional 90 days of disciplinary custody (bringing Talley's total sentence to 13 months), took away Talley's prison job, and assessed Talley's prisoner account for equipment he destroyed.

According to Talley, his inability to write while on suicide watch prevented him from appealing the January 22 punishment. He also alleges that he could not appeal the February 8 sanctions because he did not receive a written copy of the decision until after the deadline to appeal had expired.

II

Talley sued the officials discussed above, along with the DOC and its Secretary, John Wetzel. Talley's pro se complaint alleged, among other things: (1) that the DOC failed to reasonably accommodate him under the ADA and the Rehabilitation Act; (2) Yodis and Secretary Wetzel violated his Eighth Amendment rights; (3) Yodis and Dupont violated his due process rights concerning a protected property interest; and (4) Yodis, Dupont, and the Program Review Committee members violated his due process rights concerning a protected liberty interest. Talley brought the constitutional claims under 42 U.S.C. § 1983.

The Eighth Amendment claims are: (1) Yodis failed to consider Talley's mental illness during the misconduct hearings, which resulted in a cruel and unusual sentence of solitary confinement; and (2) Secretary Wetzel was willfully blind to the "ongoing practice" of prisoners such as Talley being put in isolation for conduct caused by mental illness. Talley's counsel characterizes the claim as "not that any time in solitary confinement violates the Eighth Amendment but that a 13-month stint in solitary confinement for a person with [Talley's] particular mental health profile violates the Eighth Amendment." Talley Br. 56.

In two separate orders, the District Court dismissed the constitutional claims on the merits and the ADA and Rehabilitation Act claims for failure to exhaust administrative remedies. *See* 42 U.S.C. § 1997e(a) (requiring administrative exhaustion). This timely appeal followed.

## III

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's orders. *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). The parties agree the District Court lacked a factual basis to conclude that Talley could have appealed the disciplinary rulings after the relevant deadlines because he had a "serious mental illness," and that the District Court overlooked his due process claims based on the property interest in his prison account funds. But Appellees argue remand should be limited to those issues, while Talley urges us to reverse and remand the whole case for further factual development. This disagreement requires us to decide whether: (a) Talley's transfer to Fayette mooted

6

his request for injunctive relief regarding his treatment at Graterford; (b) further factual development is needed as to the exhaustion of administrative remedies; (c) Talley alleged that Yodis and Dupont actually took his property without due process; (d) Talley has a protected liberty interest supporting his other due process claims; and (e) he has a viable Eighth Amendment claim.[1] We consider each question in turn.

A

Appellees claim Talley's transfer from Graterford to Fayette moots his request for injunctive relief. Although a "transfer from the facility complained of generally moots the equitable and declaratory claims," "dismissal of an action on mootness grounds requires the defendant to demonstrate that there is no reasonable expectation that the wrong will be repeated." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (per curiam) (internal quotation marks and citation omitted). A mootness determination is "an intensely factual inquiry." *Ortho Pharma. Corp. v. Amgen, Inc.*, 882 F.2d 806, 811 (3d Cir. 1989) (citation omitted).

Talley alleges that, after the transfer to Fayette, he remained in solitary confinement (albeit under a different correctional designation); Yodis and Dupont retained power over him; and Yodis sanctioned him to three more months of disciplinary

---

[1] We quickly address two other issues. First, while Appellees argue they are qualifiedly immune from Talley's Eighth Amendment claims, this argument fails because they did not invoke qualified immunity in the District Court. *See Bines v. Kulaylat*, 215 F.3d 381, 385–86 (3d Cir. 2000). Second, Talley's attorneys do not dispute Appellees' argument that he cannot sue the DOC under § 1983.

custody. Because we must take these allegations as true at this stage, *Allah*, 229 F.3d at 223, the facility transfer alone does not moot Talley's request for injunctive relief.

B

According to Talley, the District Court erred when it concluded that prison rules would have permitted him to appeal late because he had a "serious mental illness." *See* App. 35 (discussing a prison regulation that excuses seriously mentally ill prisoners from meeting disciplinary appellate deadlines); *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (explaining prisoners must exhaust administrative remedies only if those remedies are "available"). Talley claims that, although he is mentally ill, "serious mental illness" is a DOC phrase of art that does not apply to him. Appellees agree the District Court had an inadequate basis to dismiss for failure to exhaust based on the serious mental illness exception. Because "[f]ailure to exhaust is an affirmative defense the defendant must plead and prove," rather than "a pleading requirement for the prisoner-plaintiff," we will reverse the District Court's exhaustion ruling without prejudice to Appellees' right to raise the defense on remand. *See Paladino v. Newsome*, 885 F.3d 203, 207 (3d Cir. 2018) (quoting *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013)).

C

We now consider Talley's due process claims. Talley alleged that the assessment against his prison account implicated a constitutionally protected property interest. *See Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 286 (3d Cir. 2008). Because the District Court overlooked this allegation when it dismissed Talley's due process claims, this is another reason to reverse and remand.

8

Appellees agree that a remand is necessary but argue that it should be limited because it is unclear whether Talley claims he lost funds from his account. The complaint indicates otherwise: Talley was allegedly required "to pay" for equipment he destroyed. App. 53 (¶ 52). For that reason, Talley's due process claims based on the property interest against Yodis and Dupont must proceed to discovery.

D

The District Court held that Talley did not allege a constitutionally protected liberty interest. To establish such an interest in the prison conditions context, "the right alleged must confer 'freedom from restraint which . . . imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.'" *Williams v. Sec'y Pa. Dep't of Corrs.*, 848 F.3d 549, 559 (3d Cir. 2017) (quoting *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997)). Although we held in *Griffin* that "administrative custody" for as long as 15 months does not create an atypical and significant hardship, *see* 112 F.3d at 708, that decision came at the summary judgment stage. And the hardship inquiry is "fact-intensive." *Mitchell v. Horn*, 318 F.3d 523, 532–33 (3d Cir. 2003) (citation omitted).

Because the standard is so fact-based, in *Mitchell* we reversed the dismissal of a due process claim where, as here, the plaintiff filed the complaint challenging his disciplinary confinement pro se. *Id.* We held that this was the right approach—even though the case was similar to *Griffin*—given the procedural posture, the plaintiff's pro se status, and the fact that "the record [was] not sufficiently developed for us to determine whether there were other features of [the] confinement that meaningfully distinguished

9

[the plaintiff's] situation from that in *Griffin*." *Id.* at 532. The case involved "several months" of disciplinary confinement. *Id.* at 526. In this case, the District Court cited *Griffin* without discussing *Mitchell*.

Considering the similarities between this appeal and *Mitchell*, we will reverse the January 24, 2019 order to the extent it dismissed Talley's due process liberty interest claims against Yodis, Dupont, and the Program Review Committee members.

E

We turn next to the Eighth Amendment claims. The District Court held that Yodis "did not deprive [Talley] of basic necessities" or impose a punishment that dramatically departed from accepted standards of confinement. App. 15–16. The District Court also dismissed as too speculative Talley's Eighth Amendment claim that Secretary Wetzel was willfully blind to the practice of placing prisoners in solitary confinement for conduct arising from mental illness.

Appellees argue that Talley lacks a viable Eighth Amendment claim because his disciplinary custody term actually lasted 19 days, not 13 months; even 13 months would not be constitutionally significant; he was in disciplinary custody "due to his own misbehavior"; and he did not point to evidence of deliberate indifference "by any individual defendant" in his opening brief. We disagree.

First, at this stage of the litigation, we must accept Talley's allegation that he was in solitary confinement for 13 months. We have held that a prisoner stated an Eighth Amendment claim against Pennsylvania officials—including Secretary Wetzel—who were responsible for giving him "multiple 30-day stints in solitary confinement" over the

10

course of 13 months despite knowledge of his significant mental health problems. *Palakovic v. Wetzel*, 854 F.3d 209, 216–217, 226 (3d Cir. 2017). We emphasized "the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation in solitary confinement." *Id.* at 225. These "increasingly obvious" risks; the defendants' alleged knowledge of the plaintiff's mental health issues; and his claims about the defendants' awareness of suicides and self-harm by other solitary prisoners—along with a subsequent U.S. Department of Justice investigation of the plaintiff's facility—allowed his claim to survive motions to dismiss. *Id.* at 226. Because 30-day stints in solitary confinement over a period of 13 months are shorter than the 13 months Talley alleges, and because both cases turned on prison officials' alleged deliberate indifference to a prisoner's mental illness, *Palakovic* requires Talley's Eighth Amendment claims to proceed to discovery.

Appellees' argument about Talley's misconduct causing his restricted confinement is an unpersuasive attempt to distinguish *Palakovic*. First, although we may consider prison officials' penological purposes when evaluating their disciplinary decisions under the Eighth Amendment, *see Porter v. Pa. Dep't of Corrs.*, 974 F.3d 431, 446 (3d Cir. 2020), Appellees do not explain how Talley's alleged misconduct would justify putting him in solitary for 13 months despite his mental illness. *See* Response Br. 13 & n.11, 39. Second, although *Palakovic* does not explain exactly how the prisoner in that case ended up in isolation, the opinion indicates that his "behavior" arising from his mental illness was the cause. *See Palakovic*, 854 F.3d at 216. Thus, *Palakovic* is more like this case than Appellees suggest.

11

Finally, contrary to Appellees' point about Talley not discussing deliberate indifference, Talley's opening brief cited the complaint's allegation that Secretary Wetzel and Hearing Officer Yodis were responsible for putting him in solitary despite his mental illness, comparing the case to *Palakovic*. Talley Br. 54 (citing App. 48–49, 57). Talley emphasized our recognition of "the increasingly obvious" risks of prolonged solitary confinement. Talley Br. 54–55 (quoting *Palakovic*, 854 F.3d at 226). He therefore stated a claim against Yodis, who made the disciplinary decision.

Whether the District Court correctly ruled that Talley's claim against Secretary Wetzel was too speculative is a closer question. Talley's allegation that Wetzel was willfully blind to the "ongoing practice" of putting mentally ill prisoners in disciplinary custody for unintentional violations of prison rules might seem speculative at first glance, but it is enough in context. Wetzel is the Secretary of the DOC and we allowed a similar claim to proceed against him in *Palakovic*. In that case we held that the plaintiff adequately alleged that Wetzel was deliberately indifferent to the obvious risks of prolonged solitary confinement of a mentally ill prisoner, especially given Wetzel's knowledge of specific instances of suicide and self-harm by other prisoners held in isolation. *Palakovic*, 854 F.3d at 226. We noted that, as here, the plaintiff's placement on a mental health roster supported the inference "that prison officials [including Wetzel] had (or should have had) knowledge of th[e] diagnoses." *Id.* The similarities between the claims against Wetzel in *Palakovic* and this case, as well as Talley's pro se status when he filed his complaint, support reversing the order dismissing the claim against Wetzel.

*See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.").

\* \* \*

For the reasons stated, we will reverse the District Court's January 24, 2019 and August 7, 2019 orders and remand for further factual development as to the following claims: the Eighth Amendment claims against Yodis and Secretary Wetzel; the due process property interest claims against Yodis and Dupont; the due process liberty interest claims against Yodis, Dupont, and the Program Review Committee members; and the ADA and Rehabilitation Act claims against the Department of Corrections. In allowing these claims to proceed to discovery, we express no opinion as to their merits. That decision will be the District Court's task at summary judgment or trial.