**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3435
_____

ISAAC NARANJO,
                    Appellant

v.

T. WALTER, Hearing Examiner; C.O. WELLER, SCI-Rockview; C.O. HALL, SCI-
Rockview; C.O. CURTIS, SCI-Rockview; LT. SHERMAN, SCI-Rockview; LT.
HARVEY, SCI-Rockview; G. MCMAHON, DSFM-SCI-Rockview; M. HOUSER,
DSCS-SCI-Rockview; T. MILLER, CCPM-SCI-Rockview; M. C. GARMAN, Warden of
SCI-Rockview
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1-20-cv-00918)
District Judge:  Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 8, 2023

Before: SHWARTZ, BIBAS, and MONTGOMERY-REEVES, <u>Circuit Judges</u>

(Opinion filed September 12, 2023)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Appellant Isaac Naranjo appeals from the District Court's order granting summary judgment in favor of the prison officials on his retaliation claims arising under 42 U.S.C. § 1983. We will affirm.

I.[1]

At all relevant times, Naranjo was housed at State Correctional Institution-Rockview (SCI-Rockview). In November 2019, Naranjo was charged with committing two misconducts: one for being present in an unauthorized area and the second for indecently exposing himself to a non-party correctional officer. On November 25, 2019, Hearing Examiner Walter conducted two separate hearings on the misconducts, found Naranjo guilty of both misconducts, and sanctioned him to 90 days of disciplinary custody.

The events that transpired on and after November 25 present the basis for this action. During the indecent exposure hearing, Naranjo informed Hearing Examiner Walter that he had not been timely served with notice of that misconduct. According to Naranjo, Hearing Examiner Walter said that she did not care about the prison policy requiring notice, and, if Naranjo wanted special treatment, he would have to perform oral sex on her. See ECF No. 77 at ¶ 18. Correctional Officer Weller and two other prison officials smiled at that comment and told Naranjo that he would have to perform oral sex

---

[1] Because we write primarily for the benefit of the parties, we recite only the facts and procedural history relevant to our disposition.

2

on them if he wanted special treatment.  Id.  Later that day, Naranjo asked a non-party prison official if he could file a Prison Rape Elimination Act (PREA) complaint against those prison officials; Correctional Officer Weller called him a "snitch," and threatened to place him in restrictive housing[2]; and, Naranjo received Hearing Examiner Walter's reports finding him guilty of both misconducts.  See ECF No. 76 at 7–8.  The next day, Naranjo told Lieutenant Sherman that he wanted to file a PREA complaint about the sexually degrading comments.  Lieutenant Sherman threatened to issue a misconduct if Naranjo filed an unfounded PREA complaint.  Id. at 16; see also ECF No. 35 at ¶¶ 50–51.  Naranjo also contended that Lieutenant Sherman's ensuing investigation of the PREA complaint (and conclusion that the complaint was unfounded) was unreasonable.  See ECF No. 35 at ¶ 92.  Finally, on November 27, Hearing Examiner Walter and Correctional Officer Weller approached Naranjo's cell, called him a "pussy," "fagg," and a "rat" and asked him how he felt about "90 days DC-time rat."  ECF No. 35 at ¶¶ 54–55.

After exhausting his administrative remedies, Naranjo commenced the present civil rights action, alleging, among other things, that the prison officials retaliated against him for filing a PREA complaint against them.  After discovery, the prison officials moved for summary judgment, which Naranjo opposed.  The District Court granted judgment in favor of the prison officials.  Naranjo timely appealed.[3]

---

[2]  Naranjo did not explain the context for this comment.  We liberally construe his filings to allege that Hearing Examiner Walter was referring to his request to file a PREA complaint.

[3]  "We have jurisdiction pursuant to 28 U.S.C. § 1291 and may affirm the District Court's judgment on any basis supported by the record."  Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).  We exercise plenary review over a District Court's summary

3

## II.

To set forth a prima facie retaliation claim, Naranjo must establish that (1) he engaged in a constitutionally protected activity, (2) he suffered an adverse action, and (3) the constitutionally protected conduct was a substantial or motivating factor for the adverse action. See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). If he establishes this prima facie case, the burden shifts to the prison officials to show that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001).

Naranjo's intent to file a PREA complaint and his conduct of filing such a complaint are constitutionally protected activities. See Watson, 834 F.3d at 422–23. Naranjo contended that the prison officials imposed three adverse actions in retaliation for that conduct: first, he was found guilty of both misconducts; second, and relatedly, he was placed in disciplinary custody for 90 days; and third, the prison officials made sexually degrading comments and verbally harassed him. We address each in turn.

First, Naranjo contended that Hearing Examiner Walter found him guilty of the misconducts because of his intent to file a PREA complaint against her. Judgment in favor of the prison officials was proper as to this claim. Even if Naranjo could establish a prima facie case of retaliation, there was ample evidence establishing that Hearing

---

judgment order. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is warranted if defendants show "there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Examiner Walter had legitimate reasons to find Naranjo guilty of each misconduct. See id. at 425 (noting that "most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence."). In adjudicating the unauthorized presence misconduct, Hearing Examiner Walter independently reviewed the video evidence, found that it corroborated the prison official's written report that Naranjo had been observed walking beyond his designated cell range, and credited the correctional officer's report over Naranjo's version of events denying such conduct. See ECF No. 72-2 at 16. As for the indecent exposure misconduct, Hearing Examiner Walter considered the correctional officer's report (stating that Naranjo had masturbated in front of her and refused orders to stop) and credited that report over Naranjo's statement. See ECF No. 72-3 at 8. Hearing Examiner Walter thus demonstrated that she would have found Naranjo guilty of the misconducts regardless of whether he had expressed his intent to file a PREA complaint. See Watson. 834 F.3d at 426.

Second and relatedly, Naranjo contended that his placement in disciplinary custody (beginning in November 2019 and concluding in February 2020) was also retaliatory. According to Naranjo, in January 2020, correctional officers told him that if he wanted to return to general population, he needed to withdraw his PREA complaint. He believed that his refusal to withdraw that complaint was the reason why he was placed in disciplinary custody in the first place. See ECF No. 76 at 13. But here, too, the prison officials demonstrated that they would have placed Naranjo in disciplinary custody

5

irrespective of his grievance-filing activity because his 90-day sanction for the misconducts spanned from November 2019 to February 2020.[4]

Finally, Naranjo contends that Hearing Examiner Walter's disparaging comments and Lieutenant Sherman's threat and unreasonable investigation of his PREA complaint were adverse actions that supported his retaliation claim. See C.A. No. 12 at 8. Hearing Examiner Walter's comments from the November 25 hearing, while insulting and improper, were non-retaliatory; at the time those comments were made, Naranjo had not engaged in the constitutionally protected conduct of filing a PREA complaint, nor had he expressed any intent to do so. See Watson, 834 F.3d at 422–23. Rather, at that hearing, Naranjo simply informed Hearing Examiner Walter that he had not been timely served with notice of the indecent exposure misconduct. Turning to the November 27 incident, that name-calling, although temporally linked to Naranjo's earlier request to file a PREA complaint, was insufficiently adverse "to deter a person of ordinary firmness from exercising his First Amendment rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (cleaned up); see also Hayes v. Dahlke, 976 F.3d 259, 274 (2d Cir. 2020).

The same is true for Lieutenant Sherman's threat to issue a misconduct if Naranjo pursued an unfounded PREA complaint. We note that we have not decided in a precedential opinion whether a threat alone can be a sufficiently adverse action to support a retaliation claim. See Wilson v. Zielke, 382 F. App'x 151, 153 (3d Cir. 2010) (non-

---

[4] Although it is not clear whether Naranjo began serving the 90-day sanction on November 19 or November 25, see ECF Nos. 72-2 at 16; 72-3 at 8, the precise start date is not dispositive.

precedential).  However, we need not address that question here.  Lieutenant Sherman would have issued a misconduct only if Naranjo's PREA complaint turned out to be unfounded; indeed, Lieutenant Sherman provided no other grounds on which he would have issued a misconduct.  His vague threat – which closely resembles a warning – is insufficient evidence from which a jury could conclude that Naranjo suffered from an adverse action.  See Nitkin v. Main Line Health, 67 F.4th 565, 571 (3d Cir. 2023) (explaining that, to withstand a motion for summary judgment, a plaintiff "must point to concrete evidence in the record that supports each . . . essential element of his case," and cannot rest on bare or conclusory allegations and must, instead, "set forth specific facts establishing a triable issue") (quotations omitted).  Judgment in favor of the prison officials was therefore proper.

Accordingly, we will affirm the District Court's judgment.