**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2502
_____

VINCENT P. ALEXIS,
                              Appellant

v.

IAN CONNORS, Administrator BOP/DOJ; J.L. NORWOOD, Regional Director
BOP/DOJ; J. WILK, Health Service Administrator FCI Fort Dix; RAVI SOOD, MD.;
DR. N. TURNER-FOSTER; MR. HACZYNSKI; WARDEN DAVID ORTIZ; HUGH
HURWITZ, Director FBOP;

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1:18-cv-02099)
District Judge:  Honorable Christine P. O'Hearn

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 15, 2024

Before: JORDAN, PHIPPS, and NYGAARD, Circuit Judges

(Opinion filed: July 25, 2024)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Vincent Alexis appeals pro se from orders of the District Court dismissing certain claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and entering summary judgment as to the remaining claims in favor of the Defendants. For the reasons set forth below, we will modify the District Court's judgment and affirm it as modified.

I.

We write primarily for the parties, so we will recite only the facts necessary for our discussion. In February 2018, Alexis, a former federal inmate, filed a pro se civil rights complaint pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging violations of the Eighth Amendment.

Alexis' claims arose from his medical treatment while incarcerated at FCI Fort Dix. He alleged that Defendants denied and delayed his medical treatment related to his septic sinus infection and chronic Lyme disease. According to Alexis, he became seriously ill in March of 2014 and was repeatedly denied the proper level of care by prison officials and medical staff, including being refused hospitalization. He was eventually admitted to the hospital at the end of March 2014, where he spent approximately 45 days, undergoing sinus surgery, a second medical procedure, as well as a subsequent thoracotomy and blood transfusion. After he was discharged, from May 2014 to December 2015, he alleged that he continued to experience painful symptoms and that Defendants continued to deny and/or delay additional medical care, including failing to refill his antibiotics, providing incorrect diagnoses, delaying medical tests, and failing to schedule required follow-up care appointments. During this period of time, Alexis filed four related grievances: on November 6, 2014, November 20, 2014,

2

January 12, 2015, and March 5, 2015. Appellant's Complaint, Dkt No. 1, at 32, 34, 39, 42. Each grievance was denied and appealed; the last appeal ended on September 2, 2015. Dkt No. 1-3, at 157–58.

On October 18, 2018, the District Court sua sponte dismissed the Complaint without prejudice pursuant to § 1915(e)(2)(B). Regarding the allegations against Defendants Attorney General Jeff Sessions, Director Mark Inch, Director Samuels, Acting Warden Smith, and Director Jose Santana, the District Court concluded that Alexis failed to state a claim. Regarding the remaining defendants, the District Court concluded that Alexis' claims were barred by the applicable statute of limitations. Specifically, the District Court determined that, because his Complaint was filed in February 2018, the statute of limitations barred all claims that arose prior to February of 2016.

Alexis thereafter moved to amend his complaint various times. The District Court granted his April 2021 motion to amend his complaint. See Appellant's Second Amended Complaint ("SAC"), Dkt No. 30. In his SAC, Alexis set forth his allegations regarding the Defendants' post-February 2016 actions. These included: (1) 10-month delay in providing post-CT scan check (which occurred December 2016), Dkt No. 30, at 23 ¶ 55; (2) failure to bring Alexis' CT scan to his second surgery in May 2017; id. at 25 ¶ 59; (3) cancellation of his one-year surgery follow up in May 2018; id. at 27 ¶ 62; (4) retaliation by moving his cell in November 2018; id. at 29 ¶ 66; (5) 11-month delay of one-year follow up for second surgery; id. at 30 ¶ 67; (6) 80-day delay of nasal spray medication and subsequent refusal to refill; id. at 30 ¶ 67; (7) interception of his mail in

3

2019; id. at 31 ¶ 68; and (8) denial of medical care by refusing to allow him to see Dr. Gumina in January 2020; id. at 32 ¶ 71.

Defendants thereafter filed a motion to dismiss arguing, in part, that the post-February 2016 claims should be dismissed for failure to exhaust administrative remedies. Alexis opposed the motion, invoking the continuing violations doctrine to argue that he properly exhausted his administrative remedies. The District Court entered notice pursuant to Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018), informing the parties that it would construe the Defendants' motion as one for summary judgment and inviting responses. After considering the parties' responses, the District Court entered judgment in favor of the Defendants, concluding that Alexis failed to exhaust administrative remedies regarding the post-February 2016 allegations. Alexis appeals.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of the District Court's sua sponte dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B). See Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). We exercise plenary review over the District Court's grant of summary judgment. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In his brief, Alexis challenges two aspects of the District Court's judgment; (1) the District Court's sua sponte dismissal of the claims that arose prior to February 2016; and (2) the District Court's conclusion that the continuing violations doctrine did not apply to

4

his case. Because Alexis does not challenge any other aspect of the District Court's judgment, any such argument is forfeited on appeal. See Emerson v. Thiel Coll., 296 F.3d 184, 190 n.5 (3d Cir. 2002) (per curiam) (applying forfeiture doctrine to pro se appeal).

## III.

We agree with the District Court that Alexis' claims that accrued before February 2016 are time-barred.[1]

Although the statute of limitations is an affirmative defense, see Fed. R. Civ. P. 8(c), a court may dismiss claims sua sponte if a time-bar is obvious from the face of the complaint and no further development of the record is necessary. See Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir. 2006); see also Jones v. Bock, 549 U.S. 199, 215 (2007); Vasquez Arroyo v. Starks, 589 F.3d 1091, 1097 (10th Cir. 2009). A Bivens claim is "characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims. Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010). New Jersey's two-year statute of limitations for personal injury claims thus applies to Alexis' Bivens claims. See N.J. Stat. Ann. § 2A:14-2; Dique, 603 F.3d at 185. Federal law, however, governs a cause of action's accrual date,

---

[1] As noted above, the District Court dismissed Alexis' claims that arose prior to February 2016, as time-barred, without prejudice. Alexis did not replead these claims in his subsequent complaints. We have allowed "plaintiffs to appeal dismissals despite amended pleadings that omit the dismissed claim[,] *provided* repleading the particular cause of action would have been futile." U.S. ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 516 (3d Cir. 2007) (emphasis in original) (footnote omitted). We will therefore also address that cause of action.

Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir.1991), and under federal law, a cause of action accrues, and the statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based," Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir.1998) (citation omitted). Notably, the limitations period starts to run at this time even if the full extent or severity of the injury is not yet known. Kach v. Hose, 589 F.3d 626, 634–35 (3d Cir. 2009); Wallace v. Kato, 549 U.S. 384, 391 (2007).

Alexis alleged that he became ill with a septic sinus infection on March 19, 2014 and that because various defendants delayed (or denied) his medical care, his condition worsened which resulted in his hospitalization from March 22, 2014 through May 5, 2014. As such, Alexis' allegations demonstrate that he knew or should have known of his injury as early as May 2014, even though the full extent of his injuries was not known at that time. Kach, 589 F.3d at 635. Alexis additionally alleged various complaints regarding his medical care that took place while he was exhausting administrative remedies by filing various grievances. His last grievance (pertaining to these complaints) was filed on March 5, 2015, indicating that Alexis had a complete cause of action pertaining those events, *at the latest*, by March 5, 2015.

As the District Court explained, the statute of limitations is tolled while an inmate exhausts administrative remedies under the Prison Litigation Reform Act ("PLRA"). See Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 603 (3d Cir. 2015). As noted above, Alexis' Initial Complaint indicated that he filed four grievances related to his claims, the last of which was filed on March 5, 2015 and his appeal was denied on September 2,

6

2015. Thus, Alexis was required to file his complaint by September of 2017; however, he did not file his Initial Complaint until February 2018, after the statute of limitations expired. We agree with the District Court's determination that Alexis did not set forth a basis for tolling the limitations period, Dique, 603 F.3d at 185, and therefore the District Court correctly concluded that these claims were time barred.

On appeal, Alexis argues that his Eighth Amendment claim did not accrue until December 8, 2017, when he received his thoracic surgery report. Specifically, Alexis argues that the report made him aware of "the existence of a far more serious injury – abscesses with the lung parenchyma." Pro Se Brief, 3d Cir. ECF No. 8, at 4. Contrary to Alexis' assertions, however, the statute of limitations accrues when a party reasonably knew or should have known of the injury, *not* from the time the full extent of the injury becomes known. Kach, 589 F.3d at 635. Alexis additionally argues that the District Court erred in concluding that "because of [his] experience in veterinary medicine, [he] should have known of the abscesses and lung parenchymal injury." 3d Cir. ECF No. 8, at 5. Alexis' argument is incorrect, as it misstates the District Court's conclusion and, again, focuses on the extent of his injury, rather than when he knew or should have known when an injury occurred.

For these reasons, we agree with the District Court that the claims in his Initial Complaint accrued before February 2016 and are thus barred by the statute of limitations.[2]

---

[2] Despite being given leave to amend his complaint to allege that he was entitled to an equitable tolling of the limitations period, see Dkt No. 5, at 10, Alexis did not do so.

IV.

The District Court entered summary judgment in favor of the remaining defendants because Alexis failed to exhaust his administrative remedies for his post-February 2016 claims. For the reasons set forth below, we agree with the District Court that Alexis did not exhaust his administrative remedies for the claims during this period, and we will affirm the judgment with a modification that such dismissal is without prejudice.

The PLRA states that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[3] This requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prison's grievance policy "define[s] the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

As noted in the section above, Alexis filed several grievances between November 2014 and March 2015. Regarding events that took place after February 2016, however, Alexis only filed one administrative grievance related to his medical care, on October 30,

---

[3] At the time Alexis filed his SAC he was residing in a halfway house. We have not addressed in a precedential opinion whether a halfway house qualifies as a "correctional facility." See Witzke v. Femal, 376 F.3d 744, 753 (7th Cir. 2004) (determining that halfway-house resident who could leave the facility only during the day and was locked inside at night was confined for PLRA purposes). We do not reach that question here because Alexis neither raised it in the District Court nor in his brief.

8

2019.  See Dkt No. 51-2, at 3 ¶ 9; Id. at 53 (Attachment C).  Alexis did not follow the correct administrative procedure with regard to this grievance, did not appeal its rejection, and the District Court therefore concluded that he did not exhaust administrative remedies pertaining to his post-February 2016 claims.  In opposition, Alexis invoked the continuing violations doctrine, claiming that all of his injuries are "related, intertwined, and ongoing," so that that his pre-February 2016 grievances and appeal cover all post-February 2016 conduct.  Dkt No. 56, at 2.  The District Court thoroughly considered and rejected his argument, concluding that Alexis' claims "that accrued on or after February 8, 2016, are distinct and discrete events that do not involve 'the same issue[s],' as those in [Alexis' previously filed] administrative remedies."  Dkt No. 58, at 17 (quoting Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218–19 (11th Cir. 2010)).

Assuming that the continuing violations doctrine applies in the context of exhaustion of remedies under the PLRA, we agree with the District Court that this doctrine does not apply to the present case.[4]  The continuing violations doctrine is an equitable exception to the limitations period, which provides that, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period."  Cowell v. Palmer

---

[4] We have not yet had an occasion to determine whether the continuing violations doctrine applies to the PLRA exhaustion requirement.  Other circuits, however, have applied the doctrine in the exhaustion context.  See, e.g., Morgan v. Trierweiler, 67 F.4th 362, 369–70 (6th Cir. 2023).  We need not make such a determination today because even if we were to extend that doctrine to administrative exhaustion, Alexis would not benefit from it.

Twp., 263 F.3d 286, 292 (3d Cir. 2001) (quoting Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)).  The following factors guide whether to apply the continuing violations doctrine: (1) whether the violations were related in subject matter and (2) whether the acts were recurring.  Id. Furthermore, "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from the original violation."  Id. at 293 (internal quotation marks omitted) (quoting Ocean Acres Ltd. v. Dare Cty. Bd. of Health, 707 F.2d 103, 106 (4th Cir. 1983)).

We agree with the District Court that, while Alexis' complaints prior to and post-February 2016 were generally related to the same subject matter (delay, and in some circumstances the denial, of medical care), they involved "isolated, intermittent[,]" and "independently actionable act[s]."  Cowell, 263 F.3d at 294; Montanez v. Sec'y Pa. Dep't of Corr., 773 F.3d 472, 481 (3d Cir. 2014).  Notably, all of Alexis' allegations raised in the SAC concern independent actions that occurred after February 2016.  See Cowell, 263 F.3d at 293 ("The focus of the continuing violations doctrine is on affirmative acts of the defendants.").  Similarly, the alleged incidents of improper medical care in 2014 and 2015 are individually actionable and bear no connection to the alleged improper medical care he received after February 2016.[5]  It is clear that Alexis' prior grievances (filed in

---

[5] In his Initial Complaint, Alexis presented complaints mainly regarding the Defendants' conduct between 2014 and 2015, including: (1) delay and denial of medical care, and misdiagnosis, which led to his hospitalization from March 22, 2014 through May 5, 2014, Dkt No. 1, at 21–29; (2) failure to provide medication that was prescribed during hospitalization, id. at 29; (3) failure to provide adequate follow-up care following hospitalization, id. at 30; (4) denial of continued antibiotics following June 2014 and

10

2014 and 2015), would not have alerted prison officials of his complaints regarding his medical treatment *after* February 2016. See Williams v. Beard, 482 F.3d 637, 640 (3d Cir. 2007) ("The primary purpose of a grievance is to alert prison officials to a problem."). Therefore, the continuing violations doctrine does not relieve Alexis of his duty to exhaust administrative remedies as to his post-February 2016 claims.

To the extent that Alexis claims on appeal that the continuing violations doctrine applies here because "[t]here were no new, or separate injuries," Pro Se Brief, 3d Cir. ECF No. 8, at 5, we reject this argument because "the continuing-violation doctrine focuses on continuing *acts*, not *effects*." Randall v. City of Philadelphia L. Dep't, 919 F.3d 196, 199 (3d Cir. 2019).

---

November 2014 sinus pain, id. at 31–33; (5) failure to provide adequate medical care during September 2014 medical exam, id. at 31; (6) failure to provide timely update to medical condition as a result of his November 2014 radiology report and failure to provide follow-up care, id. at 34–35; (7) delay in providing CT scan, id. at 35; (8) failure to provide prompt follow-up care regarding lymph nodes and failure to promptly provide related antibiotics in December 2014, id. at 36–37; (9) failure to provide pulmonologist with radiographs to review abnormalities on at least two occasions, id. at 37, 39; (10) denial of necessary antibiotics for February 2015 nasal bleeding, id. at 41; (11) failure to properly treat concerns related to chronic Lyme Disease during April 2015 and June 2015 appointments, id. at 43–44; (12) failure to schedule timely schedule post-surgery follow up with surgeon, id. at 46–47.

In his SAC, Alexis presented complaints regarding the Defendants' post-February 2016 actions, including: (1) 10-month delay in providing post-CT scan check (which occurred December 2016), Dkt No. 30, at 23 ¶ 55; (2) failure to bring Alexis' CT scan to his second surgery in May 2017; id. at 25 ¶ 59; (3) cancellation of his one-year surgery follow up in May 2018; id. at 27 ¶ 62; (4) retaliation by moving his cell in November 2018; id. at 29 ¶ 66; (5) 11-month delay of one-year follow up for second surgery; id. at 30 ¶ 67; (6) 80-day delay of nasal spray medication and subsequent refusal to refill; id. at 30 ¶ 67; (7) interception of his mail in 2019; id. at 31 ¶ 68; and (8) denial of medical care by refusing to allow him to see Dr. Gumina in January 2020; id. at 32 ¶ 71.

11

We additionally conclude, however, that the District Court should have dismissed Alexis' post-2016 claims *without prejudice* in order to provide Alexis with the opportunity to later supplement his complaint after exhausting the required administrative remedies.  See Garrett v. Wexford Health, 938 F.3d 69, 81 n.16 (3d Cir. 2019) (explaining that a dismissal for failure to exhaust administrative remedies pursuant to the PLRA should be without prejudice).

For these reasons, we will modify the District Court's order, entered July 13, 2023, to reflect that the unexhausted claims are dismissed without prejudice, and we will affirm the judgment as modified.